## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iPic-Gold Class Entertainment, LLC, *et al.*,[1] | Case No. 19-11739 (LSS) |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER: (A) AUTHORIZING DEBTORS IN POSSESSION TO (I) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364, (II) GRANT LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. §§ 364; (III) USE CASH COLLATERAL, AND (IV) PROVIDE ADEQUATE PROTECTION TO PREPETITION CREDIT PARTIES, (B) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364; AND (C) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C) AND LOCAL BANKRUPTCY RULE 4001-2**

This matter is before the Court on the Motion (the "<u>Motion</u>") of IPIC-GOLD CLASS ENTERTAINMENT, LLC ("<u>IPIC Entertainment</u>"), IPIC GOLD CLASS HOLDINGS LLC ("<u>IPIC Holdings</u>"), IPIC TEXAS, LLC ("<u>IPIC Texas</u>"), IPIC MEDIA, LLC ("<u>IPIC Media</u>"), and DELRAY BEACH HOLDINGS, LLC ("<u>Delray Beach</u>" and collectively with IPIC Entertainment, IPIC Holdings, IPIC Texas, and IPIC Media, the "<u>Debtors</u>")[2] in these chapter 11 cases (the "<u>Chapter 11 Cases</u>"), requesting entry of an interim order (this "<u>Interim Order</u>") and a final order (the "<u>Final Order</u>") pursuant to Sections 105, 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of Title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: iPic-Gold Class Entertainment, LLC (4684); iPic Entertainment Inc. (9582); iPic Gold Class Holdings LLC (6315); iPic Media, LLC (0150); iPic Texas, LLC (N/A); and Delray Beach Holdings, LLC (1035). The Debtors' principal place of business is 433 Plaza Real, Suite 335, Boca Raton, FL 33432.

[2] Debtor iPic Entertainment, Inc. is not a party to the DIP Facility (as defined below). *For purposes of this Interim Order the term "Debtors" does not include iPic Entertainment, Inc.*

Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (as amended, the "Local Bankruptcy Rules"):

(1) authorizing the Debtors to obtain post-petition financing from the Teachers' Retirement System of Alabama, a body corporate of the State of Alabama created under Section §§ 16-25-1 *et seq.,* of the Alabama Code ("TRSA"), and the Employees' Retirement System of Alabama, a body corporate of the State of Alabama created under Section §§ 16-25-1, *et seq.,* of the Alabama Code ("ERSA," together with TRSA, each a "DIP Lender," and collectively, the "DIP Lenders"), consisting of a superpriority, secured revolving credit facility in the principal amount of up to $16,000,000 (the "DIP Facility") to be used for general working capital and liquidity purposes, including the payment of Administrative Expenses as described herein and in that certain *Debtor-In-Possession Loan and Security Agreement,* dated August 5, 2019, by and among the DIP Lenders, as Lenders, and the Debtors, as Borrower (substantially in the form attached to the Motion, together with all schedules, exhibits and annexes thereto, and as any time amended, the "DIP Loan Agreement"), of which amount ~~$13,600,000~~ $12,064,500 ~~$10,500,000~~ will be available under the DIP Facility on an interim basis (the "Interim Amount Limit") during the Interim Period (as defined below), on the terms and conditions set forth in the DIP Loan Documents (as defined in the DIP Loan Agreement) and in this Interim Order;

(2) authorizing the Debtors to execute and enter into the DIP Loan Documents and to perform all such other and further acts as may be required in connection with the DIP Loan Documents;

(3) authorizing the Debtors to use proceeds of the DIP Facility solely as expressly permitted in the DIP Loan Documents and in accordance with this Interim Order;

2

(4) granting automatically perfected (i) priming security interests in and liens on all of the DIP Collateral (as defined below) solely with respect to the Pre-Petition Debt and the Pre-Petition Collateral (as defined below) and (ii) non-priming security interests in and liens on all DIP Collateral upon which there are either pre-existing permitted senior liens or no pre-existing liens, to the DIP Lenders to the extent provided herein, and granting superpriority administrative expense status to the DIP Obligations (as defined below);

(5) authorizing the Debtors to use Cash Collateral (as defined below), subject to the Interim Amount Limit during the Interim Period;

(6) providing adequate protection to the Pre-Petition Lender (as defined below) to the extent of any diminution in value of its interests in the DIP Collateral (as defined below) and subject to the Carve-Out (as defined below);

(6) authorizing the Debtors to pay the principal, interest, fees, expenses, disbursements, and other amounts payable under the DIP Loan Documents as such amounts become due and payable;

(7) vacating and modifying the automatic stay pursuant to Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Loan Documents;

(8) subject only to and effective upon entry of the Final Order, waiving the Debtors' ability to surcharge against collateral pursuant to Section 506(c) of the Bankruptcy Code;

(9) scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order, and in connection therewith, giving and prescribing the manner of notice of the Final Hearing on the Motion; and

(10) granting the Debtors such other and further relief as is just and proper.

3

Based upon the Court's review of the Motion, the exhibits attached thereto, the *Declaration of David M. Baker in Support of First Day Motions*, sworn to as of August 5, 2019 (the "First Day Declaration"), and all matters brought to the Court's attention at the interim hearing, which was held on August 6, 2019, pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) (the "Interim Hearing"), and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED, AND ADJUDGED,** that:[3]

1.      <u>Disposition</u>.    The Motion is hereby GRANTED, as and to the extent provided herein.  Any and all objections to the relief requested in the Motion, to the extent not otherwise withdrawn, waived, or resolved by consent at or before the Interim Hearing, and all reservations of rights included therein, are hereby OVERRULED and DENIED.

2.      <u>Jurisdiction; Core Proceeding</u>.    This Court has jurisdiction over these Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.   This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      <u>Service of Motion and Notice of Interim Hearing</u>.   The Debtors have caused to be served a notice of the Motion and the Interim Hearing, including a copy of the proposed Interim Order and Budget (as defined below), by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the Office of the United States Trustee (the "U.S. Trustee"), the consolidated 30 largest unsecured creditors of the Debtors, the Internal Revenue Service, all parties who have filed requests prior to the date of service for notices under Rule 2002 of the Bankruptcy Rules, and all parties known by a Debtor to hold or assert a

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

lien on any asset of a Debtor.  The foregoing notice of the Motion, as it relates to this Interim Order and the Interim Hearing, is appropriate, due and sufficient under the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b), (c) and (d), and that no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

4.    Petition Date.   On August 5, 2019 (the "Petition Date"), each of Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, and each is continuing to manage its properties and to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed for any Debtor herein.

5.    Debtors' Stipulations.   Without prejudice to the rights of any other party (but subject to the limitations thereon contained in Paragraph 26 below), each Debtor, ~~including~~ _excluding_ Debtor iPic Entertainment, Inc., admits, stipulates, acknowledges and agrees as follows:

a.    Pre-Petition Loan Documents.   Pursuant to that certain *Second Amended and Restated Master Loan and Security Agreement* dated February 1, 2018, as amended by Modification Agreement dated June 22, 2018, as further amended by Second Modification Agreement dated June 29, 2018, as further amended by Third Modification Agreement dated March 4, 2019 (as so amended, the "Pre-Petition Loan Agreement"), by and among ~~IPIC GOLD CLASS ENTERTAINMENT, LLC, IPIC GOLD CLASS HOLDINGS LLC, IPIC TEXAS, LLC, IPIC MEDIA, LLC, DELRAY BEACH HOLDINGS, LLC,~~ _Debtors (excluding iPic Entertainment, Inc,)_ and BAY COLONY REALTY, LLC,[4] collectively, the "Pre-Petition Obligors"), TRSA, as administrative and collateral agent (together,

---

[4]  Bay Colony Realty, LLC was dissolved prepetition and is not a Debtor in these proceedings.

the "Pre-Petition Agent"), and TRSA and ERSA as Lenders (the "Pre-Petition Lenders," and collectively with the Pre-Petition Agent, the "Pre-Petition Credit Parties"), made a term loan facility available to the Pre-Petition Obligors in an aggregate principal amount not to exceed $225,828,169. The Pre-Petition Loan Agreement, together with any other agreement, note, instrument, guaranty, mortgage, fixture filing, deed of trust, financing statement, pledge, assignment, and other document executed at any time in connection therewith, in each case as the same may be amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "Pre-Petition Loan Documents").

    b.  Pre-Petition Collateral. Pursuant to certain of the Pre-Petition Loan Documents, the Pre-Petition Obligors granted the Pre-Petition Agent, for the benefit of the Pre-Petition Credit Parties and to secure such Pre-Petition Obligors' obligations and indebtedness under the Pre-Petition Loan Documents, first priority liens on and security interests in (the "Pre-Petition Security Interests") the Collateral, as defined in the Pre-Petition Loan Agreement and Collateral Documents (hereafter, the "Pre-Petition Collateral").

    c.  Pre-Petition Obligations. As of the Petition Date, the Pre-Petition Obligors, jointly and severally, were justly and lawfully indebted and liable under the Pre-Petition Loan Documents to the Pre-Petition Credit Parties for term loans in the outstanding principal amount of $205,340,772 (the "Pre-Petition Loans", and together with all other obligations of any Pre-Petition Obligor in respect of indemnities, guaranties and other payment assurances given by any Pre-Petition Obligor for the benefit of Pre-Petition Credit Parties, and all interest, fees, costs, legal expenses and all other amounts heretofore or hereafter accruing thereon or at any time chargeable to any Pre-Petition Obligor in connection therewith, collectively referred to as the "Pre-Petition Debt"). Each Debtor acknowledges and stipulates that: (i) the Pre-Petition Debt is due

and owing to the Pre-Petition Credit Parties without any defense, offset, recoupment or counterclaim of any kind; (ii) the Pre-Petition Debt constitutes the legal, valid and binding obligation of each Pre-Petition Obligor, enforceable in accordance with its terms; (iii) and none of the Pre-Petition Debt or any payments made to any Pre-Petition Credit Party or applied to the obligations owing under any Pre-Petition Loan Document prior to the Petition Date is subject to avoidance, subordination, re-characterization, recovery, attack, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

d.      Cash Collateral. Substantially all cash, securities or other property of the Pre-Petition Obligors (and the proceeds therefrom) as of the Petition Date, including, without limitation, all amounts on deposit or maintained by any Pre-Petition Obligor in any account with any Pre-Petition Credit Party or any bank or other depository institution (each a "Depository Institution"), was subject to rights of setoff or to valid, perfected, enforceable first-priority liens under the Pre-Petition Loan Documents and applicable law, and is included in the Pre-Petition Collateral, and therefore the Pre-Petition Obligors' cash balances are cash collateral of the Pre-Petition Credit Parties within the meaning of Section 363(a) of the Bankruptcy Code. All such cash (including, without limitation, all proceeds of Pre-Petition Collateral and all proceeds of property encumbered by liens and security interests granted under this Interim Order), is referred to herein as "Cash Collateral."

e.      Releases. Subject to Paragraph 26 below, the Pre-Petition Obligors hereby absolutely, unconditionally and irrevocably waive, discharge and release each of the Pre-Petition Credit Parties of and from any and all "Claims" (as defined in the Bankruptcy Code), counterclaims, actions, debts, accounts, causes of action (including, without limitation, causes of

7

action in the nature of "lender liability"), defenses or setoff rights that any of them may have against any Pre-Petition Credit Party or any of the respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, officers, agents, employees, attorneys and affiliates of any Pre-Petition Credit Party which arise out of or in any manner relate to any of the Pre-Petition Loan Documents or any acts, inaction, or transactions thereunder, whether known or unknown, disputed or undisputed, at law or in equity, including, without limitation, (i) any re-characterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law or municipal law and (ii) any right or basis to challenge or object to the amount, validity or enforceability of the applicable Pre-Petition Debt or any payments made on account of the applicable Pre-Petition Debt, or the validity, enforceability, priority or non-avoidability of the applicable Pre-Petition Security Interests securing the applicable Pre-Petition Debt.

   f. <u>Need for Financing</u>.  An immediate and ongoing need exists for the Debtors to obtain the DIP Facility in order to permit, among other things, the orderly continuation of the operation of their business, to maintain business relationships with vendors, suppliers and customers, to pay payroll obligations, and to satisfy other working capital, development, and operational needs so as to maximize the value of their respective businesses and assets as debtors in possession under chapter 11 of the Bankruptcy Code. The Debtors do not have sufficient available resources of working capital to operate their businesses in the ordinary course without post-petition financing. The Debtors' ability to continue growth, maintain business relationships with vendors and customers, to pay employees, and otherwise to fund operations is essential to

the Debtors' viability and to the preservation of the going concern value of their businesses pending a sale of their assets.

6.    Findings Regarding the DIP Facility.

a.    Good Cause. Good cause has been shown for the entry of this Interim Order and authorization for the Debtors to incur DIP Obligations pursuant to the DIP Loan Agreement and use Cash Collateral as hereinafter provided up to the Interim Amount Limit during the Interim Period. Each Debtor's need for financing of the type afforded by the DIP Loan Agreement and the use of Cash Collateral is immediate and critical. Entry of this Interim Order will preserve the assets of each Debtor's estate and its value and is in the best interests of Debtors, their creditors and their estates. The terms of the proposed financing are fair and reasonable, reflect each Debtor's exercise of business judgment, and are supported by reasonably equivalent value and fair consideration.

b.    Proposed DIP Facility. The Debtors have requested that the DIP Lenders establish the DIP Facility pursuant to which the Debtors may obtain loans from time to time (the "DIP Loans", and collectively with all other debts, obligations, liabilities and indemnities of the Debtors under the DIP Loan Documents, the "DIP Obligations"), all in accordance with and subject to the terms of the DIP Loan Documents, with all DIP Obligations being secured by all real and personal property of the Debtors, wherever located and whether created, acquired or arising prior to, on or after the Petition Date. The DIP Lenders are willing to establish the DIP Facility upon the terms and conditions set forth herein and in the DIP Loan Agreement, substantially in the form attached to the Motion, and the other DIP Loan Documents.

c.    No Credit Available on More Favorable Terms. Despite diligent efforts, the Debtors have been unable to obtain financing on more favorable terms from sources

9

other than DIP Lenders under the DIP Loan Documents and are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under Sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting priming liens under Section 364(d)(1) of the Bankruptcy Code and the Superpriority Claims (as defined in Paragraph 10 below) under the terms and conditions set forth in this Interim Order and in the DIP Loan Documents.

   d. <u>Budget</u>. The Debtors have prepared and annexed to this Interim Order as **Exhibit 1** hereto a budget (as at any time amended or supplemented with the written consent of the DIP Lenders, the "<u>Budget</u>") which sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby and which the Debtors believe in good faith to be realistic and achievable. The DIP Lenders are relying upon the Budget in entering into the DIP Loan Agreement and Pre-Petition Credit Parties are relying upon the Budget in consenting to the terms of this Interim Order. The Debtors shall provide the DIP Lenders with an updated 13-week Budget commencing on the first Wednesday following the end of the fourth (4th) Loan Week (as defined in the DIP Loan Agreement), and on each Wednesday thereafter, which shall be subject to the approval requirements in the DIP Loan Documents. Commencing on the first Wednesday following the end of the fourth (4th) Loan Week and continuing on each Wednesday thereafter, the Debtors shall deliver to the DIP Lenders (i) a comparison of actual to budgeted results of operations for the preceding four (4) Loan Weeks, and (ii) a report of all income and expense variance on a line-item basis for the preceding four (4) Loan Weeks. All references restricting the use of Cash Collateral and DIP Loan proceeds to payment of amounts set forth in the Budget shall mean the most recent approved Budget, subject to the "Permitted Variance" and "Permitted Variance Exception" (each as defined in the DIP Loan Documents).

e.    <u>Certain Conditions to DIP Facility</u>.  The DIP Lenders' willingness to make DIP Loans pursuant to the DIP Loan Documents, and the Pre-Petition Credit Parties' willingness to allow Debtors to use Cash Collateral, is conditioned upon, among other things, (i) the Debtors' obtaining Court approval of the DIP Loan Agreement and all DIP Obligations of the Debtors and all rights and remedies of DIP Credit Parties thereunder; (ii) the Debtors' provision of adequate protection for Pre-Petition Credit Parties' interests in the Pre-Petition Collateral pursuant to Sections 361 and 363(e) of the Bankruptcy Code; and (iii) each DIP Lender receiving, as security for the prompt payment of all DIP Obligations, a security interest in and lien upon all of each Debtor's pre-petition and post-petition real and personal property, including, without limitation, all of each Debtor's cash, accounts, inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, intellectual property, real property and leasehold interests (to the extent subject to valid and enforceable prepetition liens, mortgages, or deeds of trust that have been approved in writing by applicable landlords or expressly permitted by the terms of applicable leases), the proceeds of leased real property (to the extent not subject to valid and enforceable prepetition liens, mortgages, or deeds of trust that have been approved in writing by applicable landlords or expressly permitted by the terms of applicable leases), contract rights, and books and records relating to any assets of such Debtor and all proceeds (including, without limitation, insurance proceeds) of the foregoing, whether such assets were in existence on the Petition Date or were thereafter created, acquired or arising and wherever located (all such real and personal property, including, without limitation, all Pre-Petition Collateral and the proceeds thereof, being collectively hereinafter referred to as the "<u>DIP Collateral</u>"), and (iii) that such security interests and liens have the priorities hereinafter set forth.  Notwithstanding the foregoing, the DIP

11

Collateral shall not include (i) the Debtors' real property leases to the extent not subject to valid and enforceable prepetition liens, mortgages, or deeds of trust that have been approved in writing by applicable landlords or expressly permitted by the terms of applicable leases (but shall include the proceeds of such leases) and (ii) pending entry of the Final Order, the DIP Collateral shall not include a lien upon and security interest in any of Debtors' claims and causes of action pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code ("Avoidance Claims") or any proceeds or other property ("Avoidance Proceeds") recovered in connection with the successful prosecution, settlement or collection of any Avoidance Claims.

        f.      Interim Hearing.  Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Bankruptcy Rule 4001-2, the Court has held the Interim Hearing and hereby authorizes Debtors to use Cash Collateral and obtain DIP Loans during the period from the date of entry of this Order through the date on which the final hearing on the Motion pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) scheduled pursuant to Paragraph 32 of this Interim Order is concluded (the "Interim Period"), for purposes specified in the initial Budget.

        g.      Finding of Good Faith.  Based upon the record presented at the Interim Hearing, the DIP Facility and the Debtors' use of Cash Collateral were negotiated in good faith and at arm's-length between the Debtors, on the one hand, and the DIP Lenders and Pre-Petition Credit Parties, on the other.  All of the DIP Obligations including, without limitation, all DIP Loans made pursuant to the DIP Loan Agreement and all other liabilities and obligations of any Debtors under this Interim Order owing to the DIP Lenders and the Pre-Petition Credit Parties, as applicable, including the Debtors' use of Cash Collateral, shall be deemed to have been extended by the DIP Lenders and the Pre-Petition Credit Parties in "good faith," as such term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by

Section 364(e) of the Bankruptcy Code. The DIP Lenders and the Pre-Petition Credit Parties shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

h.    Immediate Entry.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  Absent granting the interim relief sought by the Motion, each Debtor's estate will be immediately and irreparably harmed pending the Final Hearing.  The Debtors' consummation of the DIP Facility in accordance with the terms of this Interim Order and the DIP Loan Agreement and each Debtor's immediate access to Cash Collateral is in the best interest of each Debtor's estate and is consistent with each Debtor's exercise of its fiduciary duties.  Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules.   No further notice of the relief sought at the Interim Hearing is necessary or required.

7.    Authorization of Interim Financing; Use of Proceeds.

a.    The Court hereby authorizes and approves the Debtors' execution and delivery of the DIP Loan Agreement in substantially the form annexed to the Motion (with such changes, if any, as were made prior to or as a result of the Interim Hearing or are otherwise authorized to be made as amendments to the DIP Loan Agreement in accordance with this Interim Order) and all DIP Loan Documents.

b.    The Debtors are hereby authorized to borrow money pursuant to  the  DIP Loan Documents, on the terms and subject to the conditions, lending formulae and sub-limits set forth in any DIP Loan Document and this Interim Order, up to an aggregate

outstanding principal amount at any time not exceeding the sum of $13,500,000, plus applicable interest, protective advances, expenses, fees and other charges payable in connection with such DIP Loans, and to incur any and all liabilities and obligations under the DIP Loan Documents and to pay all principal, interest, fees, expenses and other obligations provided for under the DIP Loan Documents (including any obligations, to the extent provided for in the DIP Loan Documents, to indemnify the DIP Lenders).

c.      No DIP Lender shall have any obligation or responsibility to monitor any Debtor's use of the DIP Loans, and each DIP Lender may rely upon each Debtor's representations that the amount of DIP Loans requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).

d.      No proceeds of any DIP Loan shall be used to (i) make any payment in settlement or satisfaction of any pre-petition claim (excluding the Pre-Petition Debt) or administrative claim (excluding the DIP Obligations), unless such payment is in compliance with the Budget, permitted under the DIP Loan Documents, and separately approved by the Court upon notice to, and no formal objection having been timely filed with the Court by, the DIP Lenders; (ii) except as expressly provided or permitted hereunder, to make any distributions not in compliance with the Budget, or as otherwise approved by the DIP Lenders, including without limitation, to make any payment or distribution to any non-Debtor affiliate, equity holder, or insider of any Debtor; or (iii) to make any payment otherwise prohibited by this Interim Order.

8.      Execution, Delivery and Performance of DIP Loan Documents.  The DIP Loan Documents may be executed and delivered on behalf of each Debtor by any officer, director, or agent of such Debtor, who by signing shall be deemed to represent himself or herself to be duly

14

authorized and empowered to execute the DIP Loan Documents for and on behalf of such Debtor. The DIP Lenders shall be authorized to rely upon any such person's execution and delivery any of the DIP Loan Documents as having been done with all requisite power and authority so to do, and the execution and delivery of any of the DIP Loan Documents or amendments thereto by any such person on behalf of such Debtor shall be conclusively presumed to have been duly authorized by all necessary corporate, limited liability company, or other entity action (as applicable) of such Debtor.  Upon execution and delivery thereof, each of the DIP Loan Documents shall constitute valid and binding obligations of each Debtor, enforceable against each Debtor in accordance with their terms for all purposes during its Chapter 11 Case, any subsequently converted case of such Debtor under Chapter 7 of the Bankruptcy Code (each, a "Successor Case"), and after the dismissal of its Chapter 11 Case with respect to those provisions of the DIP Loan Documents which expressly survive the Termination Date and any such dismissal.  Subject to Paragraph 26 of this Interim Order, no obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including, without limitation, under Sections 502(d), 544, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.  In furtherance of the provisions of Paragraph 7 of this Interim Order, each Debtor is authorized to do and perform all acts; to make, execute and deliver all instruments and documents (including, without limitation, security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements, amendments, waivers, consents, other modifications, and intellectual property filings); and to pay all reasonable fees, costs and expenses in each case as

15

may be necessary or, in the opinion of either DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Loan Documents, to validate the perfection of the DIP Liens (as defined below), or as may otherwise be required or contemplated by the DIP Loan Documents.

9.    DIP Liens.  As security for Debtors' payment and performance of all DIP Obligations, each DIP Lender shall have and is hereby granted valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens upon all of the DIP Collateral, subject to the provisions in Paragraph 9(d) (collectively, the "DIP Liens") and in the priorities set forth herein.  Subject to the provisions of Paragraph 26 hereof and the Carve-Out and any break-up fees and expense reimbursement obligations of the Debtors approved by the Court with respect to the APA (as defined in the DIP Loan Agreement),[5] the DIP Liens shall be:

a.    Unencumbered Property.  Pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected, first priority senior liens on, and security interests in, all DIP Collateral that is not otherwise subject to valid, perfected, enforceable and unavoidable liens on the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens arising subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

b.    Liens Junior to Certain Other Liens.  Pursuant to Section 364(c)(3) of the Bankruptcy Code, junior only to valid, binding, perfected and unavoidable interests of any other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date that were senior in priority to the liens of the Pre-Petition Credit Parties, or to any valid,

---

[5]  Notwithstanding anything to the contrary in this Interim Order, nothing in this Interim Order or the DIP Loan Documents should be construed as awarding an administrative expense or superpriority administrative expense status to any break-up fee or expense reimbursement relating to the APA.  Any bid protections will be addressed by separate motion and order.

16

perfected and unavoidable interests in such property arising out of liens arising subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code that are senior in priority to the liens of the Pre-Petition Credit Parties.

        c.      <u>Priming DIP Liens</u>.  Pursuant to Section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected security interests in and liens upon the DIP Collateral, which security interests and liens shall be prior and senior in all respects to (i) the security interests and liens in favor of Pre-Petition Credit Parties with respect to the Pre-Petition Collateral, and (ii) the Adequate Protection Liens (as defined below) with respect to the Pre-Petition Collateral.

        d.      <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens and the Adequate Protection Liens, aside from the Carve-Out and unless the Adequate Protection Liens are successfully challenged pursuant to Paragraph 26 below, shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of any Debtor or its estate under Section 551 of the Bankruptcy Code, (B) any liens or security interests granted by any Debtor to other persons or entities after the Petition Date, or (C) any intercompany or affiliate liens or security interests of the Debtors; (ii) subordinated to or made *pari passu* with any other lien or security interest under Section 363 or 364 of the Bankruptcy Code or otherwise; or (iii) subject to Sections 510, 549 or 550 of the Bankruptcy Code. In no event shall any person or entity who pays (or, through the extension of credit to any Debtor, causes to be paid) any of the DIP Obligations or the obligations and indebtedness of the Pre-Petition Credit Parties, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, any DIP Lender by the terms of any DIP Loan Documents or this

Interim Order unless such person or entity contemporaneously causes Full Payment of the Pre-Petition Debt owed to such DIP Lender to be made.[6]

      10.   <u>Superpriority Claims</u>.  All DIP Obligations shall constitute joint and several allowed superpriority claims (the "~~Superiority~~ *Superpriority* Claims") against each Debtor (without the need to file any proof of claim) pursuant to Section 364(c)(1) of the Bankruptcy Code having priority in right of payment over all other obligations, liabilities and indebtedness of each Debtor, whether now in existence or hereafter incurred by any Debtor, and over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order approving the grant), 507, 546(c) *(subject to entry of the Final Order)*, 552(b), 726, 1113, or 1114 of the Bankruptcy Code.  Such Superpriority Claims shall for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code and shall be payable from all pre-petition and post-petition property of Debtors and all proceeds thereof; *provided, however*, that the Superpriority Claims shall be subject to the Carve-Out (as defined below) and any break-up fees and expense reimbursement obligations of the Debtors approved by the Court with respect to the APA (as defined in the DIP Loan Agreement); and *provided, however*, that to the extent the Superpriority Claims are payable out of Avoidance Claims and Avoidance Proceeds, such payment shall be subject to entry of the Final Order.

---

[6] As used herein, the term "Full Payment," as applied to DIP Obligations or Pre-Petition Debt, shall mean full and final payment of such indebtedness in cash, the cash collateralization of any contingent obligations as and to the extent required by the applicable loan documents, termination of any commitments to lend under any of the applicable loan documents, expiration of the Challenge Deadline (as defined below) without a challenge having been timely asserted, and, in the case of the DIP Obligations, termination of the DIP Facility.

11.    Repayment. The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Loan Documents and as provided herein, without offset or counterclaim. Without limiting the generality of the foregoing, in no event shall any Debtor be authorized to offset or recoup any amounts owed, or allegedly owed, by any Pre-Petition Credit Party or any DIP Lender to any Debtor or any of its respective subsidiaries or affiliates against any of the DIP Obligations without the prior written consent of each Pre-Petition Credit Party or DIP Lender that would be affected by any such offset or recoupment, and no such consent shall be implied from any action, inaction or acquiescence by any Pre-Petition Credit Party or DIP Lender.

12.    Use of Cash Collateral. The Debtors are authorized, by this Interim Order, subject to the terms and conditions of the DIP Loan Documents and the Interim Order, to use all Cash Collateral, including, without limitation, any Cash Collateral on which the Pre-Petition Credit Parties hold a lien, to fund any post-petition cost or expense incurred by the Debtors to the same extent that the use of DIP Loan proceeds would be permitted to fund such cost or expense under the terms of the DIP Loan Agreement and subject to the Budget; *provided, however,* that no Cash Collateral shall be used in a manner that would be a Prohibited Purpose (as defined herein). The Debtors' right to use Cash Collateral, other than the Carve-Out, shall terminate automatically on the Termination Date as defined in the DIP Loan Agreement. Notwithstanding the foregoing, the Debtors' right to use Cash Collateral shall immediately terminate without notice from the DIP Lenders or the Pre-Petition Credit Parties at the time that any Debtor has actual knowledge of the existence of an Event of Default if the Debtors fail to promptly notify the DIP Lenders and the Pre-Petition Credit Parties of such Event of Default. Prior to the Termination Date, the Debtors and the DIP Lenders and/or Pre-Petition Credit Parties shall negotiate in good faith regarding the terms of the Debtors' continued use of Cash Collateral to wind-down the estates.

19

13. <u>Adequate Protection of Pre-Petition Credit Parties</u>. As adequate protection for any Collateral Diminution (as defined below) suffered by any Pre-Petition Credit Party, the Pre-Petition Agent is entitled, pursuant to Sections 105, 361, 363(e) and 364 of the Bankruptcy Code, to adequate protection of its interests in the Pre-Petition Collateral in an amount equal to the Collateral Diminution (the "<u>Adequate Protection Claims</u>"). As used in this Interim Order, "<u>Collateral Diminution</u>" shall mean an amount equal (and limited) to the aggregate diminution of the fair market value of any of the Pre-Petition Collateral (including Cash Collateral) from and after the Petition Date for any reason provided for in the Bankruptcy Code, including, without limitation, any such diminution resulting from the Carve-Out, the use of Cash Collateral, the priming of the Pre-Petition Agent's security interests in and liens on the Pre-Petition Collateral by the DIP Liens pursuant to the DIP Loan Documents and this Interim Order, the depreciation, sale, loss or use by any Debtor (or any other decline in value) of such Pre-Petition Collateral, the amount of any fees and expenses paid to retained professionals in these Chapter 11 Cases, in accordance with the Budget, and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code. The Pre-Petition Agent is hereby granted, subject to the Carve-Out and the rights of third parties preserved under Paragraph 26 and solely to the extent of any Collateral Diminution, the following for the benefit of Pre-Petition Credit Parties:

a. <u>Adequate Protection Liens</u>. The Pre-Petition Agent, for the benefit of the Pre-Petition Credit Parties, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by any Debtor of security agreements, pledge agreements, mortgages, financing statements or other agreements) valid, perfected replacement security interests in and liens on all of the DIP Collateral (the "<u>Adequate Protection Liens</u>"). The Adequate Protection Liens on DIP Collateral shall be junior and subordinate only to

20

the DIP Liens, the Carve-Out, and any break-up fees and expense reimbursement obligations of the Debtors approved by the Court with respect to the APA (as defined in the DIP Loan Agreement). The Adequate Protection Liens shall not be subject to Sections 506(c) (effective upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code, and unless otherwise ordered by the Court, no lien avoided and preserved for the benefit of any estate pursuant to Section 510 of the Bankruptcy Code shall be made *pari passu* with or senior to any Adequate Protection Liens.

        b.     <u>Priority of Adequate Protection Claims</u>. The Adequate Protection Claims, if any, will be allowed as superpriority administrative claims pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, which, subject to the Superpriority Claims, the Carve-Out, and any break-up fees and expense reimbursement obligations of the Debtors approved by the Court with respect to the APA (as defined in the DIP Loan Agreement), shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, which shall at all times be senior to the rights of each Debtor, and any successor trustee or any creditor in these Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code, *provided, however*, that the Adequate Protection Claims entitled to superpriority administrative status shall only be payable out of Avoidance Claims and Avoidance Proceeds subject to entry of the Final Order.

        c.     <u>Fees and Expenses of Professionals for Pre-Petition Credit Parties</u>. As additional adequate protection, the Debtors shall pay (i) the reasonable and documented professional fees and expenses (including, but not limited to, the fees and disbursements of

counsel, third-party consultants, financial advisors, and auditors) payable to or incurred by any Pre-Petition Credit Party under and pursuant to the Pre-Petition Loan Documents arising prior to the Petition Date, and (ii) on a current basis, the reasonable and documented professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) payable to or incurred by any Pre-Petition Credit Party under and pursuant to the Pre-Petition Loan Documents arising on or subsequent to the Petition Date, in each case in compliance with the Budget.  At the option of the Pre-Petition Credit Parties, all such amounts may be added to the Pre-Petition Debt in lieu of current payment thereof by the Debtors.  Notwithstanding the foregoing, no payments shall be made by the Debtors on account of any professional fees and expenses of a Pre-Petition Credit Party until each relevant professional has provided copies of its fee and expense statements to the U.S. Trustee and counsel to any official committee appointed in the Debtors' case (the "Committee") reasonably contemporaneously with the delivery of such fee and expense statements to the Debtors.  Such statements need not be submitted in the form of a fee application, but shall contain reasonable detail as to the number of hours worked and applicable hourly rates, but may be redacted to the extent necessary to delete any information subject to attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  The U.S. Trustee, any Committee or any other party in interest may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted hereunder, provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the parties seeking reimbursement no later than ten (10) days after the objecting parties receive such applicable

22

professional fee invoice, and (ii) it describes with particularity the items and categories of fees, costs and expenses that are subject to the objection and it provides for a specific basis for the objection to each such item of category of fees, costs and expenses; *provided, however*, that the Debtors shall pay all amounts that are not subject of any objection within ten (10) days of the objection deadline. Any hearing on an objection to any payment of any fees, costs and expenses of such professionals shall be limited to the particular items or categories of fees, costs, and expenses which are the subject to such objection. Notwithstanding the foregoing, immediately upon entry of this Interim Order, the Debtors are authorized to pay all reasonable and documented fees, costs and out-of-pocket expenses of the DIP Lenders and the Pre-Petition Credit Parties incurred on or prior to the date of entry hereof.

d.    Reservation of Rights. Nothing herein shall be deemed to be a waiver by any Pre-Petition Credit Party of its right to request additional or further protection of its interests in any Pre-Petition Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner for any Debtor or the conversion or dismissal of any of these Chapter 11 Cases, or to request any other relief in these cases; nor shall anything herein or in any of the DIP Loan Documents constitute an admission by a Pre-Petition Credit Party regarding the quantity, quality or value of any DIP Collateral securing the Pre-Petition Debt or constitute a finding of adequate protection with respect to the interests of Pre-Petition Agent in any DIP Collateral. Pre-Petition Credit Parties shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale, encumbering or other disposition of any of the DIP Collateral, to the extent that the protection afforded by this Interim Order to Pre-Petition Agent's interests in any DIP Collateral proves to be inadequate.

14. <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted (a) to the DIP Lenders or (b) subject only to the potential challenges by third-parties as permitted but limited by Paragraph 26 below, to Pre-Petition Agent on behalf of any Pre-Petition Credit Party, in each case pursuant to the provisions of this Interim Order or any subsequent order of this Court, shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Sections 506(c) (subject to entry of the Final Order approving the grant) or the "equities of the case" exception of 552(b) of the Bankruptcy Code (subject to entry of the Final Order).

15. <u>Fees and Expenses of Estate Professionals</u>. Subject to the terms of the DIP Loan Agreement and the Budget, for so long as no Event of Default has occurred, each Debtor is authorized to use DIP Loans to pay such compensation and expense reimbursement (collectively, "<u>Professional Fees</u>") of professional persons (including attorneys, financial advisors, accountants, investment bankers, claims and/or noticing agents, appraisers, and consultants) retained by any Debtor with Court approval or as an ordinary course professional (the "<u>Debtors Professionals</u>") or the Committee with Court approval (the "<u>Committee Professionals</u>," collectively with the Debtors Professionals, the "<u>Professionals</u>"), to the extent that such compensation and expense reimbursement is allowed and approved by the Court, other than with respect to ordinary course professionals of the Debtors (including through any interim compensation procedures approved by the Court); *provided, however,* that, notwithstanding anything herein or in any other order of this Court to the contrary, no proceeds of any DIP Loans or any Cash Collateral shall be used to pay Professional Fees incurred for any Prohibited Purpose (as defined below).

16.     Section 506(c) Claims. Effective upon entry of the Final Order, no costs or expenses of administration shall be imposed upon any DIP Lender, any Pre-Petition Credit Party or any of the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of such DIP Lender or Pre-Petition Credit Party, and no such consent shall be implied from any action, inaction or acquiescence by any DIP Lender or Pre-Petition Credit Party, provided that the following administrative expenses are fully funded by the Debtors consistent with the Budget:  (a) the Carve-Out and (b) all expenses that are accrued and unpaid through the date of an Event of Default under the line items in the Budget designated as "Payroll Costs," "Sales Taxes" and "PACA/PASA Claims."

17.     Carve-Out. Notwithstanding anything in this Interim Order, any DIP Loan Documents, any Pre-Petition Loan Documents, or any other order of this Court to the contrary, the DIP Obligations, the DIP Liens and Superpriority Claims in favor of the DIP Lenders, the Adequate Protection Liens in favor of the Pre-Petition Agent, the Adequate Protection Claims in favor of the Pre-Petition Credit Parties, and the Pre-Petition Debt and the Pre-Petition Security Interests in favor of the Pre-Petition Credit Parties shall be subject and subordinate in all respects to the payment of the following Carve-Out. As used in this Interim Order, the "Carve-Out" means the sum of (a) all fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court, (b) all of the reasonable fees and expenses from time to time incurred by each Professional retained by the Debtors and the Committee (amounts set forth in the Budget are specific to each Professional and may be rolled over to subsequent weeks), including any fees earned by PJ Solomon Securities, LLC ("PJS") as investment banker for the Debtors that are approved by this Court, that are (i) incurred prior to the date of delivery of a Default Notice (as defined below) (except in the case of any fees earned by PJS, which shall be included in the Carve-

Out whenever incurred), and (ii) included in an approved Budget (except in the case of any fees earned by PJS, which shall be included in the Carve-Out in the amount approved by this Court), and (c) a maximum of $250,000 for all of the reasonable fees and expenses from time to time incurred by Professionals retained by Borrower (other than PJS, which is addressed above) that are incurred from and after the date of delivery of a Default Notice; *provided,* that nothing in this Interim Order shall be construed to impair the ability of any party to object to the fees, expenses, reimbursements or compensation of any Professional, whether or not in excess of the coverage provided by the Carve-Out. In no event shall the Carve-Out, or the funding of the DIP Loans to satisfy the Carve-Out, result in any reduction in the amount of the DIP Obligations or the Pre-Petition Debt. Prior to the date of delivery of a Default Notice ~~:~~ *but subject to entry of the Final Order* (A) an amount sufficient to pay the Carve-Out for Professional Fees may be funded by the Debtors on a weekly basis into a trust account held by Debtors' counsel (the "<u>Professional Fee Trust Account</u>") in accordance with the approved Budget, (B) the Debtors shall be permitted to borrow under the DIP Loan Agreement to fund the Professional Fee Trust Account in the amounts contemplated under clause (b) above, and (C) the Debtors shall be permitted to pay, from the Professional Fee Trust Account, as and when the same may become due and payable, the allowed Professional Fees of each Professional. Following the date of delivery of a Default Notice, the Debtors shall be permitted to fund the Professional Fee Trust Account in the amount of $250,000 contemplated under clause (c) above. All amounts funded by the Debtors to the Professional Fee Trust Account shall continue to constitute DIP Collateral. Any excess amounts remaining in the Professional Fee Trust Account after payment of the Carve-Out for Professionals shall be refunded to the Debtors and shall remain DIP Collateral.

26

18.  <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out, nor the proceeds of the DIP Facility in any respect, including without limitation any DIP Loans, Cash Collateral or DIP Collateral, shall be used to pay any Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following (each a "<u>Prohibited Purpose</u>"): (a) objecting to or contesting the validity or enforceability of this Interim Order, any DIP Obligations or Pre-Petition Debt, *provided* that the Committee may spend up to $25,000 (the "<u>Investigation Budget</u>") for the fees and expenses incurred in connection with the investigation of, but not the litigation, objection or any challenge to, any Pre-Petition Security Interest, Pre-Petition Debt, or Pre-Petition Loan Documents; (b) asserting or prosecuting any claim or cause of action against any DIP Lender or any Pre-Petition Credit Party, other than to enforce the terms of the DIP Facility or this Interim Order; (c) seeking to modify any of the rights granted under this Interim Order to any DIP Lender or any Pre-Petition Credit Party; or (d) objecting to, contesting, delaying, preventing or interfering in any way with the exercise of rights and remedies by any DIP Lender or Pre-Petition Credit Party with respect to any DIP Collateral or Pre-Petition Collateral after the occurrence and during the continuance of an Event of Default, provided that the Debtors *or Committee* may contest or dispute whether an Event of Default has occurred and shall be entitled to any notice provisions provided in this Interim Order.

19.  <u>Preservation of Rights Granted Under This Interim Order</u>.

a.  <u>Protection from Subsequent Financing Order</u>.  There shall not be entered in any of these Chapter 11 Cases or in any Successor Case any order that authorizes the obtaining of credit or the incurrence of indebtedness by any Debtor (or any trustee or examiner) that is (i) secured by a security interest, mortgage or collateral interest or lien on all or any part of

27

the DIP Collateral that is equal or senior to the DIP Liens or (ii) entitled to priority administrative status that is equal or senior to the Superpriority Claims granted to DIP Lenders herein; *provided, however,* that nothing herein shall prevent the entry of an order that specifically provides for, as a condition to the granting of the benefits of clauses (i) or (ii) above, the Full Payment of all of the DIP Obligations, in the manner required by the DIP Loan Agreement, from the proceeds of such credit or indebtedness, and the termination of any funding commitments under the DIP Facility.

b.    <u>Rights Upon Dismissal, Conversion or Consolidation</u>.  If any of the Chapter 11 Cases are dismissed, converted or substantively consolidated with another case, then neither the entry of this Interim Order nor the dismissal, conversion or substantive consolidation of any of the Chapter 11 Cases shall affect the rights or remedies of any DIP Lender under the DIP Loan Documents or the rights or remedies of any DIP Lender or Pre-Petition Credit Party under this Interim Order, and all of the respective rights and remedies hereunder and thereunder of each DIP Lender and each Pre-Petition Credit Party shall remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, or substantively consolidated.  Unless and until Full Payment of all DIP Obligations and Adequate Protection Claims has occurred, it shall constitute an Event of Default if any Debtor seeks, or if there is entered, any order dismissing any of the Chapter 11 Cases.  If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, the Adequate Protection Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until Full Payment of all DIP Obligations and  all Adequate Protection Claims, (ii) such Superpriority Claims, Adequate Protection Claims, DIP  Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in

interest, (iii) the other rights granted by this Interim Order shall not be affected, including the rights granted by Paragraph 26 of this Interim Order, and (iv) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this Paragraph and otherwise in this Interim Order.

        c.      <u>Survival of Interim Order</u>. The provisions of this Interim Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases or any Successor Case.

        d.      <u>No Discharge</u>. None of the DIP Obligations shall be discharged by the entry of any order confirming a plan of reorganization or liquidation in any of these Chapter 11 Cases and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, each Debtor has waived such discharge.

        e.      <u>Credit Bid Rights</u>. Following entry of the Final Order and subject to the requirements of section 363(k) of the Bankruptcy Code, but without prejudice to any successful challenge brought prior to the Challenge Deadline, the DIP Lenders and the Pre-Petition Credit Parties shall each have the right to credit bid, individually or on a combined basis, up to the full amount of the applicable outstanding DIP Obligations and Pre-Petition Debt (as applicable), in each case including any accrued interest or other agreed charges, in any sale of the DIP Collateral (or any part thereof) or Pre-Petition Collateral (or any part thereof), as applicable, without the need for further Court order authorizing same, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise. For the avoidance of doubt, without prejudice to any successful challenge brought prior to the Challenge Deadline, no plan of reorganization or

liquidation, nor any motion in connection with a sale of any Debtor's assets under Section 363 of the Bankruptcy Code, in any of these Chapter 11 Cases shall seek to limit or otherwise restrict the right of Pre-Petition Agent or the DIP Lenders to credit bid for all or any part of the Pre-Petition Collateral or DIP Collateral.

        f.     <u>No Marshaling</u>. Subject to entry of the Final Order, in no event shall any DIP Lender or Pre-Petition Credit Party be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral, and in no event shall any DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of any Debtor's estate pursuant to Section 551 of the Bankruptcy Code.

        g.     <u>No Requirement to File Claim for DIP Obligations or Pre-Petition Debt</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar date order establishing a deadline for the filing of proofs of claim entitled to administrative expense treatment under Section 503(b) of the Bankruptcy Code, no DIP Lender shall be required to file any proof of claim with respect to any of the DIP Obligations and no Pre-Petition Credit Party shall be required to file any proof of claim with respect to any Pre-Petition Debt, ~~all of which shall be due and payable in accordance with the DIP Loan Documents and the Pre-Petition Loan Documents, as applicable, without the necessity of filing any such proof of claim;~~ and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the DIP Loan Documents or Pre-Petition Loan Documents, or prejudice or otherwise adversely affect any rights, remedies, powers or privileges of any DIP Lender under any of the DIP Loan Documents, any Pre-Petition Credit Party under any of the Pre-Petition Loan Documents, or any DIP Lender or Pre-Petition Credit Party under this Interim Order.

20.    _Automatic Perfection of Liens_. The DIP Liens, and subject to the third party challenge rights in Paragraph 26, the Adequate Protection Liens, shall be deemed valid, binding, enforceable and duly perfected upon entry of this Interim Order. Neither any Pre-Petition Credit Party nor any DIP Lender shall be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including taking possession of any of the DIP Collateral) in order to validate the perfection of any DIP Liens or the Adequate Protection Liens, but all of such filings and other actions are hereby authorized by the Court. The DIP Lenders shall be deemed to have "control" over all deposit accounts for all purposes of perfection under the Uniform Commercial Code. If the Pre-Petition Agent or the DIP Lenders shall, in their discretion, choose to file or record any such mortgages, deeds of trust, security deeds, notices of lien, or UCC-1 financing statements, or take any other action to evidence the perfection of any part of the DIP Liens or the Adequate Protection Liens, each Debtor and its respective officers are authorized to execute any documents or instruments as the Pre-Petition Agent or DIP Lenders shall request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order. Any Pre-Petition Credit Party or DIP Lender may, in its discretion, file a certified copy of this Interim Order in any filing office in any jurisdiction in which any Debtor is organized or has or maintains any DIP Collateral or an office, and each filing office is ~~directed~~ authorized to accept such certified copy of this Interim Order for filing and recording. [~~Any provision of any lease (other than any non-residential real property lease), license, contract or other agreement that requires the consent or approval of one or more counterparties or requires the payment of any fees or obligations to any governmental entity, in order for a Debtor to pledge, grant, sell, assign or otherwise transfer any such interest or the proceeds thereof is hereby found to be (and shall be deemed to be) inconsistent~~

~~with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the~~

~~transactions granting the DIP Lenders a security interest in and lien on such interest, or the~~

~~proceeds of any assignment and/or sale thereof by any Debtor, accordance with the terms of the~~

~~applicable DIP Loan Documents and this Interim Order.~~]

21.    _Reimbursement of Expenses_.  All reasonable and documented costs and

expenses incurred by the DIP Lenders in connection with (a) the negotiation and drafting of any

DIP Loan Documents or any amendments thereto, (b) the preservation, perfection, protection

and enforcement of any DIP Lender's rights hereunder or under any DIP Loan Documents, (c)

the collection of any DIP Obligations, or (d) the monitoring of these Chapter 11 Cases, including,

without limitation, all filing and recording fees and reasonable fees and expenses of attorneys,

accountants, consultants, financial advisors, appraisers and other professionals incurred by a DIP

Lender in connection with any of the foregoing, whether any of the foregoing were incurred prior

to or after the Petition Date, shall form a part of the DIP Obligations owing to such DIP Lender

and shall be paid by Debtors (without the necessity of filing any application with or obtaining

further order from the Court) in accordance with the terms of the applicable DIP Loan Documents.

Notwithstanding the foregoing, no payments shall be made by the Debtors on account of any

professional fees and expenses of a DIP Lender until each relevant professional has provided

copies of its fee and expense statements to the U.S. Trustee and counsel to any Committee

reasonably contemporaneously with the delivery of such fee and expense statements to the Debtors

consistent with the procedures set forth in Paragraph 13(d) of this Interim Order.

22.    _Amendments to DIP Loan Documents_.  The Debtors and DIP Lenders are

hereby authorized to implement, in accordance with the terms of the applicable DIP Loan

Documents and without further order of the Court, any amendments to and modifications of any

32

of such DIP Loan Documents on the following conditions: (a) the amendment or modification must not constitute a material change to the terms of such DIP Loan Documents, (b) copies of the amendment or modification must be served upon counsel for the Committee (and, prior to the appointment of a Committee, upon the Debtors' consolidated 30 largest unsecured creditors), the U.S. Trustee, and other interested parties specifically requesting such notice, and (c) notice of the amendment must be filed with the Court.  Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.  For purposes hereof, a "material change" shall mean a change to a DIP Loan Document that operates to shorten the DIP Facility or the maturity of the DIP Obligations, to increase the aggregate amount of the commitments of DIP Lenders under the DIP Facility, to increase the rate of interest other than as currently provided in or contemplated by the DIP Loan Documents, to add specific Events of Default, or to enlarge the nature and extent of remedies available to a DIP Lender following the occurrence of an Event of Default.  Without limiting the generality of the foregoing, any amendment of a DIP Loan Document to postpone or extend any date or deadline therein (including, without limitation, the expiration of the term of the DIP Facility) shall not constitute a "material change" and may be effectuated by Debtors and the DIP Lenders without the need for further approval of the Court.

23.    Events of Default; Remedies.

a.    Events of Default.  The occurrence of any "Event of Default" under (and as defined in) the DIP Loan Agreement shall constitute an Event of Default under this Interim Order.

b.    Default Remedies.  Upon the occurrence and continuance of an Event of Default, and following the expiration of any applicable cure period set forth in the DIP Loan Agreement, (a) the DIP Lenders may file with the Court and serve upon the Debtors, counsel

33

for the Debtors, counsel for the Committee and the U.S. Trustee a written notice (a "Default Notice") describing the Events of Default that exist, in which event effective five (5) business days thereafter (the "Default Notice Period"), the DIP Lenders shall be fully authorized, in their sole discretion, to demand payment of all DIP Obligations, and hold and apply any balances in any accounts of the Debtors to the payment or cash collateralization of any of the DIP Obligations, subject to payment of the Carve-Out; and (b) each DIP Lender and the Pre-Petition Agent shall be deemed to have received complete relief from the automatic stay imposed by Section 362(a) of the Bankruptcy Code with respect to all of the DIP Collateral and Pre-Petition Collateral, respectively, effective following the expiration of the Default Notice period, unless the Court determines otherwise after an expedited hearing.  Upon the effectiveness of any relief from the automatic stay granted or deemed to have been granted and subject to payment of the Carve-Out, the DIP Lenders and the Pre-Petition Agent may enforce their respective DIP Liens, the Pre-Petition Security Interests, and the Adequate Protection Liens, as applicable, with respect to the DIP Collateral, take all other actions and exercise all other remedies under the DIP Loan Documents, the Pre-Petition Loan Documents and applicable law that may be necessary or deemed appropriate to collect any of its DIP Obligations and/or the Pre-Petition Debt, proceed against or realize upon all or any portion of the Collateral as if these Chapter 11 Cases or any superseding Chapter 7 case was not pending, and otherwise enforce any of the provisions of this Interim Order.  Notwithstanding anything to the contrary herein, the DIP Lenders and the Pre-Petition Agent may only enter upon a leased premises of the Debtors after an Event of Default in accordance with (i) a separate written agreement among the DIP Lenders, the Pre-Petition Agent, and the applicable landlord for the leased premises, (ii) pre-existing rights of the DIP Lenders or the Pre-Petition Agent under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased

34

premises, or (iv) entry of an order by this Court approving such access to the premises after notice and an opportunity to be heard for the applicable landlord for the leased premises. Any delay or failure to exercise rights and remedies by the DIP Lenders or Pre-Petition Agent under the DIP Loan Documents or this Interim Order shall not constitute a waiver of such DIP Lender or Pre-Petition Agent's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Loan Agreement. In furtherance of Paragraph 17 above, the DIP Lenders shall provide for cash payment of the Carve-Out from the proceeds of the DIP Collateral before any sums are paid to the DIP Lenders from such proceeds.

        c.    <u>Rights Cumulative</u>.   The rights, remedies, powers and privileges conferred upon DIP Credit Parties pursuant to this Interim Order shall be in addition to and cumulative with those contained in the applicable DIP Loan Documents.

        24.    <u>Loan Administration</u>.

        a.    <u>Continuation of Pre-Petition Procedures</u>.  All pre-petition cash management practices and procedures of the Debtors, including any lockbox and/or blocked depository bank account arrangements, to the extent approved by the Court by separate order, shall continue without interruption after the commencement of the Chapter 11 Cases, and shall be deemed effective for the benefit of the DIP Lender.

        b.    <u>Inspection Rights</u>.  Representatives of each DIP Lender shall be authorized, with reasonable prior notice to Debtors, to visit the business premises of any Debtor and its subsidiaries during regular business hours to (i) inspect any Collateral, (ii) inspect and make copies of any books and records of any Debtor, and (iii) verify or obtain supporting details

concerning the financial information to be provided by any Debtor hereunder or under any of the DIP Loan Documents, and the Debtors shall facilitate the exercise of such inspection rights.

      c.     <u>DIP Lenders' Right to Retain Professionals</u>. Each DIP Lender shall be authorized to retain attorneys, appraisers, consultants, auditors, field examiners and financial advisors, at Debtors' expense, which attorneys, appraisers, consultants, auditors, field examiners and financial advisors shall be afforded reasonable access to the Collateral and each Debtor's business premises and records, during normal business hours, for purposes of monitoring the businesses of Debtors, verifying each Debtor's compliance with the terms of the DIP Loan Documents and this Interim Order, and analyzing or appraising all or any part of the Collateral. All such amounts payable to or incurred under this clause (c) shall be payable in accordance with Paragraph 21 above.

      25.     <u>Modification of Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified and lifted to the extent necessary to implement the provisions of this Interim Order and the DIP Loan Documents, thereby permitting the DIP Lenders and Pre-Petition Agent to receive collections and proceeds of Collateral for application to the DIP Obligations and the Pre-Petition Debt as and to the extent provided herein, to file or record any UCC-1 financing statements, mortgages, deeds of trust, security deeds and other instruments and documents evidencing or validating the perfection of the DIP Liens or Adequate Protection Liens, and to enforce the DIP Liens and Adequate Protection Liens as and to the extent authorized by this Interim Order.

      26.     <u>Effect of Stipulations on Third Parties; Deadline for Challenges</u>.

      a.     Each Debtor's admissions, stipulations, agreements and releases contained in this Interim Order, including, without limitation, those contained in Paragraph 5 of

this Interim Order, shall be binding upon such Debtor and any successor thereto (including, without limitation any Chapter 7 trustee or Chapter 11 trustee or examiner appointed or elected for such Debtor) under all circumstances and for all purposes, *provided that* if a trustee or examiner is appointed prior to the Challenge Deadline (as defined below), he or she shall not be bound by the admissions, stipulations, agreements and releases herein until the later of fourteen (14) days after appointment or expiration of the Challenge Deadline (subject to extension by the Court).

    b.  Each Debtor's admissions, stipulations, agreements and releases contained in this Interim Order, including, without limitation, those contained in Paragraph 5 of this Interim Order, shall be binding upon all other parties in interest (including, without limitation, any Committee) under all circumstances and for all purposes unless (i) the Committee or another party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) having requisite standing has timely ~~and properly~~ filed an adversary proceeding or contested matter by no later than the Challenge Deadline (A) objecting to or challenging the amount, validity, perfection, enforceability priority or extent of the Pre-Petition Debt or any Pre-Petition Credit Party's Liens, or (B) otherwise asserting any defenses, claims, causes of action, counterclaims or offsets against any Pre-Petition Credit Party or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. As used herein, the term "Challenge Deadline" means the date that is the later of (i) in the case of a party in interest with requisite standing other than the Committee, seventy-five (75) days after entry of this Interim Order, (ii) in the case of any Committee, sixty (60) days after the filing of notice of appointment of a Committee ~~(and subject to the Investigation Budget)~~, (iii) any such later date agreed to in writing by the Pre-Petition Credit Parties, in their sole

discretion, and (iv) any such later date ordered by the Court for the cause shown after notice and an opportunity to be heard, provided that such order is entered before the expiration of any applicable period as set forth in clauses (i) through (iii) of this sentence.

c.      If no adversary proceeding or contested matter is timely ~~and properly~~ filed as of the applicable Challenge Deadline against a Pre-Petition Credit Party or the Court does not rule in favor of the plaintiff in any such proceeding, then in these Chapter 11 Cases and in any Successor Case each Debtor's admissions, stipulations, agreements and releases contained in this Interim Order, including, without limitation, those contained in Paragraph 5 of this Interim Order, shall be binding on all parties in interest. If any such adversary proceeding or contested matter is ~~properly~~ filed by the applicable Challenge Deadline, each Debtor's admissions, stipulations, agreements and releases contained in this Interim Order, including, without limitation, those contained in Paragraph 5 of this Interim Order, shall nonetheless remain binding and preclusive on such party, except to the extent that such admissions, stipulations, agreements and releases were expressly challenged in such adversary proceeding or contested matter and the party bringing such challenge prevails on the merits. Nothing contained in this Interim Order shall vest or confer any person or entity, including any Committee, standing or authority to pursue or commence any such adversary proceeding or contested matter.

d.      Notwithstanding anything else contained in this Interim Order, if an adversary proceeding or contested matter is timely ~~and properly~~ filed as of the applicable Challenge Deadline against a Pre-Petition Credit Party, the entity prosecuting that timely adversary proceeding or motion can, if successful, challenge the adequate protection provided with respect to any lien avoided and payments made to any Pre-Petition Credit Party and all of the provisions regarding Adequate Protection Claims and Adequate Protection Liens in this Order are qualified

38

by this reservation of the rights of third parties.  If the Adequate Protection payments made exceed the amount of adequate protection to which any Pre-Petition Credit Party is entitled, that excess shall be applied to that Pre-Petition Credit Party's allowed secured claim.

27.     Debtors' Waivers.  At all times during the Chapter 11 Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to seek authority (i) until Full Payment of all DIP Obligations and Pre-Petition Debt, to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Lenders on the terms and conditions set forth herein; (ii) to challenge the application of any payments authorized by this Interim Order pursuant Section 506(b) of the Bankruptcy Code; (iii) to propose or support a plan of reorganization or liquidation that does not provide for the indefeasible payment in full and satisfaction of all DIP Obligations, and, subject to entry of the Final Order, all Pre-Petition Debt on or before the effective date of such plan; (iv) to challenge that any security interests, claims or liens arising on account of intercompany transactions are junior and subordinate to all DIP Obligations and Pre-Petition Security Interests; or (v) to seek relief under the Bankruptcy Code, including, without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of any DIP Lender or any Pre-Petition Credit Party as provided in this Interim Order or any of the DIP Loan Documents, as applicable, or a DIP Lender's exercise of such rights or remedies.

28.     Service of Interim Order.  Promptly after the entry of this Interim Order, Debtors shall mail, by first class mail, a copy of this Interim Order, the Motion (and all exhibits attached to the Motion), and a notice of the Final Hearing, to (without duplication) counsel for the DIP Lenders and Pre-Petition Agent, the U.S. Trustee, the U.S. Securities & Exchange

Commission, counsel for the Committee (or, if the Committee has not been formed and selected counsel as of the entry of this Interim Order, then the Debtors' consolidated 30 largest unsecured creditors), the Internal Revenue Service, all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules prior to the time of such service, and all parties known by a Debtor to hold or assert a lien on any assets of a Debtor, and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and sufficient notice of the Final Hearing and the relief sought by the Debtors pursuant to the proposed Final Order.

29.     No Deemed Control.  In determining to make any DIP Loan under the DIP Facility, ~~or in exercising any rights or remedies~~ as and when permitted pursuant to this Interim Order, any Final Order or the DIP Loan Documents, no DIP Lender and no Pre-Petition Credit Party shall be deemed to be in control of any Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.,* as amended, or any similar state or federal statute) with respect to the operation or management of such Debtor.

30.     Exculpation.  Effective upon entry of the Final Order, nothing in this Interim Order, the DIP Loan Documents, or any other document related to the DIP Facility shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Lender or any Pre-Petition Credit Party any liability for any claims arising from the pre-petition or post-petition activities of any Debtor in the operation of its business or in connection with its restructuring efforts.  Effective upon entry of the Final Order, so long as a DIP Lender or Pre-Petition Credit Party complies with its obligations under the applicable DIP Loan Documents and its obligations, if any, under this Interim Order and applicable law (i) such DIP Lender or Pre-Petition Credit Party

shall not, in any way or manner, be liable or responsible for (A) the safekeeping of the Collateral, (B) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (C) any diminution in the value thereof, or (D) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person or entity; and (ii) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

31.    <u>Binding Effect; Successors and Assigns</u>.  The provisions of the DIP Loan Documents and this this Interim Order, including all findings herein (subject to Paragraph 26 of this Interim Order) shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Lenders and Debtors and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed for the estate of any Debtor, any Chapter 7 trustee appointed or elected in a Successor Case, any examiner appointed pursuant to Section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor), and shall inure to the benefit of DIP Lenders and their respective successors and assigns.  In no event shall any DIP Lender or Pre-Petition Credit Party have any obligation to make DIP Loans to, or permit the use of the Collateral (including Cash Collateral) by, any Chapter 7 trustee, Chapter 11 trustee or similar responsible person appointed or elected for the estate of any Debtor.

32.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order shall be held at 11:00 o'clock a.m., prevailing Eastern time on Sept. 11, 2019, at Courtroom 2, 6th Floor, United States Bankruptcy Court, 824 Market Street North, Wilmington, Delaware 19801. The Final Hearing may be adjourned or postponed without further notice except as may be announced in open Court or posted on the Court's docket.  If any or all of the provisions of this Interim Order are modified, vacated or stayed as the result of any Objection (as defined below)

41

timely filed and asserted at the Final Hearing, then, without limiting the provisions of Paragraph

26 hereof, any DIP Obligations incurred prior to the effective date of such modification, vacation

or stay shall be governed in all respects by the original provisions of this Interim Order, and the

DIP Lenders shall be entitled to the protections afforded under Section 364(e) of the Bankruptcy

Code, ~~and to all the rights, remedies, privileges, and benefits, including, without limitation, the DIP~~

~~Liens and Superiority Claims granted herein and pursuant to the DIP Loan Documents with respect~~

~~to all such DIP Obligations~~.

33.    <u>Objection Deadline</u>.  If any party in interest shall have an objection to any

of the provisions of this Interim Order, any provisions of the DIP Loan Documents, or any

provisions of the proposed Final Order (collectively, an "<u>Objection</u>"), such party may assert such

Objection at the Final Hearing, if a written statement setting forth the basis for such Objection is

filed with the Court and concurrently served so as to be received on or before 4 :00 p.m., prevailing

Eastern time on Sept. 4 , 2019, by the following: (a) the Office of the United States Trustee, 844

King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (b) counsel for the Debtors,

Jeffrey N. Pomerantz, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd, 13th Floor,

Los Angeles, California, 90067-4003 and Peter J. Keane, Pachulski Stang Ziehl & Jones LLP, 919

N. Market Street, 17th Floor, Wilmington, Delaware 19801; and (c) counsel for the Pre-Petition

Agent and DIP Lenders, Derek F. Meek, Burr & Forman LLP, 420 North 20th Street, Suite 3400,

Birmingham, Alabama 35203.  If an objecting party shall fail to appear at the Final Hearing and

assert the basis for such Objection before the Court, such Objection ~~shall~~ may be deemed to have been

waived and abandoned by such objecting party.

34.    <u>Insurance</u>.  To the extent the Pre-Petition Agent is listed as mortgagee, loss

payee or additional insured under any Debtor's insurance policies, the DIP Lenders shall also

deemed to be the loss payee, mortgagee or additional insured under such Debtor's insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies.

35.    <u>Effectiveness; Enforceability</u>.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be valid, take full effect, and be enforceable immediately upon entry hereof; there shall be no stay of execution or effectiveness of this Interim Order; and any stay of the effectiveness of this Interim Order that might otherwise apply is hereby waived for cause shown.

36.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any Chapter 11 plan for any Debtor notwithstanding the terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

37.    <u>Inconsistencies</u>.  To the extent of any inconsistencies or conflicts between this Interim Order and the DIP Loan Documents, this Interim Order shall govern.

Dated: August 6, 2019
      Wilmington, DE

UNITED STATES BANKRUPTCY JUDGE

DOCS_SF:101590.10 39566/001

## EXHIBIT 1

## BUDGET

**iPic Entertainment, Inc.**
**DIP Cash Flow Forecast**
**(USD 000's)**

| Actual / Forecast → | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Number → | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| Week Start Date → | 08/02/19 | 08/09/19 | 08/16/19 | 08/23/19 | 08/30/19 | 09/06/19 | 09/13/19 | 09/20/19 | 09/27/19 | 10/04/19 | 10/11/19 | 10/18/19 | 10/25/19 | 08/02/19 |
| Week End Date → | 08/08/19 | 08/15/19 | 08/22/19 | 08/29/19 | 09/05/19 | 09/12/19 | 09/19/19 | 09/26/19 | 10/03/19 | 10/10/19 | 10/17/19 | 10/24/19 | 10/31/19 | 10/31/19 |
| **Operational Receipts** | 3,042 | 2,748 | 2,716 | 2,324 | 2,616 | 2,510 | 2,654 | 2,217 | 2,608 | 3,546 | 3,193 | 3,272 | 2,707 | 36,094 |
| **Operational Disbursements** | | | | | | | | | | | | | | |
| Payroll Costs | (2,135) | - | (2,082) | - | (2,143) | - | (1,993) | - | (2,143) | - | (2,046) | - | (2,099) | (14,840) |
| SG&A | - | (185) | (185) | (185) | (185) | (185) | (185) | (185) | (185) | (200) | (141) | (185) | (190) | (3,057) |
| Film Rental | - | (1,714) | (388) | (478) | (1,714) | (404) | (455) | (437) | (1,714) | (386) | (454) | (617) | (545) | (5,287) |
| Cinema Operations - Rent & CAM | - | (1,078) | (750) | (848) | (798) | (843) | (736) | (829) | (812) | (922) | (815) | (818) | (818) | (10,067) |
| Cinema Operations | - | - | (443) | - | (443) | - | - | - | (443) | - | - | - | - | (5,142) |
| Other | - | (442) | (111) | (243) | (311) | (275) | (355) | (243) | (1,003) | (235) | (502) | (243) | (209) | (3,449) |
| **Total Operational Disbursements** | (2,135) | (3,419) | (3,959) | (1,754) | (5,594) | (1,707) | (3,724) | (1,694) | (6,300) | (1,743) | (3,958) | (1,863) | (3,861) | (41,651) |
| **Net Cash Flow from Operations** | 907 | (671) | (1,243) | 570 | (2,978) | 803 | (1,070) | 523 | (3,692) | 1,803 | (765) | 1,409 | (1,154) | (5,557) |
| **Restructuring** | | | | | | | | | | | | | | |
| Restructuring Fees Escrow | - | (4,370) | - | - | - | - | - | - | - | - | - | - | - | (4,370) |
| Restructuring Professional Fees | (232) | (230) | (230) | (257) | (257) | (232) | (232) | (232) | (232) | (207) | (207) | (207) | (207) | (2,962) |
| Secured Lender Professional Fees | - | - | (296) | - | (329) | - | - | - | (263) | - | - | - | (263) | (1,151) |
| US Trustee Fees | - | - | - | - | (102) | - | (5) | - | - | - | (5) | - | (253) | (365) |
| DIP Loan Interest and Fees | - | - | - | - | - | - | - | - | (134) | - | - | - | - | (133) |
| PACA/PASA Claims | - | - | - | (245) | - | - | - | - | - | - | - | - | - | (245) |
| Critical Vendor Claims | - | - | - | (692) | - | - | - | - | - | - | - | - | - | (3,150) |
| Utility Deposits | - | - | - | - | - | - | - | - | - | - | - | - | - | (409) |
| Other | - | - | - | - | - | - | - | (5) | - | - | - | - | - | (17) |
| **Total Restructuring** | (232) | (4,600) | (526) | (1,194) | (688) | (232) | (237) | (232) | (629) | (207) | (212) | (207) | (723) | (9,919) |
| **Net Cash Flow** | 675 | (5,271) | (1,769) | (624) | (3,666) | 571 | (1,307) | 291 | (4,321) | 1,596 | (977) | 1,202 | (1,877) | (15,476) |
| **Liquidity Summary** | | | | | | | | | | | | | | |
| Beginning Cash Balance | 453 | 1,129 | 2,358 | 589 | 3,965 | 299 | 3,870 | 2,563 | 2,854 | 533 | 2,129 | 1,152 | 2,354 | 453 |
| Net Cash Flow | 675 | (5,271) | (1,769) | (624) | (3,666) | 571 | (1,307) | 291 | (4,321) | 1,596 | (977) | 1,202 | (1,877) | (15,476) |
| DIP Advances / (Paydowns) | - | 6,500 | - | 4,000 | - | 3,000 | - | - | 2,000 | - | - | - | 500 | 16,000 |
| Ending Cash Balance | 1,129 | 2,358 | 589 | 3,965 | 299 | 3,870 | 2,563 | 2,854 | 533 | 2,129 | 1,152 | 2,354 | 977 | 977 |
| **DIP Loan Commitment** | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 |
| **DIP Availability** | 16,000 | 9,500 | 9,500 | 5,500 | 5,500 | 2,500 | 2,500 | 2,500 | 500 | 500 | 500 | 500 | - | - |
| **Total Available Liquidity (Cash + DIP)** | 17,129 | 11,858 | 10,089 | 9,465 | 5,799 | 6,370 | 5,063 | 5,354 | 1,033 | 2,629 | 1,652 | 2,854 | 977 | 977 |
| **Funded DIP Facility - BOP** | - | - | 6,500 | 6,500 | 10,500 | 10,500 | 13,500 | 13,500 | 13,500 | 15,500 | 15,500 | 15,500 | 15,500 | - |
| + Advances | - | 6,500 | - | 4,000 | - | 3,000 | - | - | 2,000 | - | - | - | 500 | 16,000 |
| - (Paydowns) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Funded DIP Facility - EOP** | - | 6,500 | 6,500 | 10,500 | 10,500 | 13,500 | 13,500 | 13,500 | 15,500 | 15,500 | 15,500 | 15,500 | 16,000 | 16,000 |

iPic Entertainment, Inc.
Professional Fees Schedule
(USD 000's)

| | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast 5 | Forecast 6 | Forecast 7 | Forecast 8 | Forecast 9 | Forecast 10 | Forecast 11 | Forecast 12 | Forecast 13 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual / Forecast --> | | | | | | | | | | | | | | |
| Week Number --> | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| Week Start Date --> | 08/02/19 | 08/09/19 | 08/16/19 | 08/23/19 | 08/30/19 | 09/06/19 | 09/13/19 | 09/20/19 | 09/27/19 | 10/04/19 | 10/11/19 | 10/18/19 | 10/25/19 | 08/02/19 |
| Week End Date --> | 08/08/19 | 08/15/19 | 08/22/19 | 08/29/19 | 09/05/19 | 09/12/19 | 09/19/19 | 09/26/19 | 10/03/19 | 10/10/19 | 10/17/19 | 10/24/19 | 10/31/19 | 10/31/19 |
| **Restructuring Fees Escrow** | | | | | | | | | | | | | | |
| Debtor Counsel (PSZJ) | (105) | (105) | (105) | (105) | (105) | (80) | (80) | (80) | (80) | (55) | (55) | (55) | (55) | (1,065) |
| Debtor CRO | (59) | (59) | (59) | (59) | (59) | (59) | (59) | (59) | (59) | (59) | (59) | (59) | (59) | (765) |
| Debtor FA | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (325) |
| UCC Counsel | - | - | - | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (150) |
| UCC FA | - | - | - | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (128) |
| Investment Banker | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (375) |
| Noticing & Claims Agent | (12) | (12) | (12) | (12) | (12) | (12) | (12) | (12) | (12) | (12) | (12) | (12) | (12) | (155) |
| **Total Restructuring Fees Escrow** | **(230)** | **(230)** | **(230)** | **(257)** | **(257)** | **(232)** | **(232)** | **(232)** | **(232)** | **(207)** | **(207)** | **(207)** | **(207)** | **(2,963)** |
| **Secured Lender Professional Fees** | | | | | | | | | | | | | | |
| Secured Lender Counsel | - | (270) | - | - | (209) | - | - | - | (167) | - | - | - | (167) | (813) |
| Secured Lender FA | - | (100) | - | - | (120) | - | - | - | (96) | - | - | - | (96) | (413) |
| **Total Secured Lender Professional Fees** | **-** | **(370)** | **-** | **-** | **(329)** | **-** | **-** | **-** | **(263)** | **-** | **-** | **-** | **(263)** | **(1,226)** |