**Exhibit 1**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iPic-Gold Class Entertainment LLC, *et al.*,[1] | Case No. 19-11739 (___) |
| Debtors. | (Joint Administration Requested) |

### MOTION FOR ENTRY OF ORDER (I) AUTHORIZING DEBTORS TO (A) PAY AND HONOR PREPETITION COMPENSATION, REIMBURSABLE BUSINESS EXPENSES, AND EMPLOYEE BENEFIT OBLIGATIONS, AND (B) MAINTAIN AND CONTINUE CERTAIN COMPENSATION AND BENEFIT PROGRAMS POSTPETITION; AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Company") file this motion (the "Motion") for the entry an order authorizing the Debtors, in accordance with their past and current policies and practices, to: (a) pay and honor any prepetition obligations to employees, and continue to honor ongoing obligations in the ordinary course of business, on account of accrued wages, salaries, or commissions; (b) to pay and honor any prepetition obligations, with respect to each of the Debtors' employee benefits, plans and programs (the "Benefit Programs"); (c) reimburse the employees and independent contractors for prepetition expenses incurred on behalf of the Debtors in the ordinary course of business (the "Reimbursable Expenses"); (d) pay all related prepetition payroll taxes and other deductions (the "Withholding Obligations"); (e) pay all amounts due and owing to independent contractors that provide services to the Debtors; and (f) pay, to the extent that any of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: iPic Entertainment Inc. (9582); iPic-Gold Class Entertainment, LLC (4684); iPic Gold Class Holdings LLC (6315); iPic Media, LLC (0150); iPic Texas, LLC (N/A); and Delray Beach Holdings, LLC (1035). The Debtors' principal place of business is 433 Plaza Real, Suite 335, Boca Raton, FL 33432.

11
8-5-19

foregoing programs is administered, brokered, insured, or paid through a third-party

administrator or provider, any prepetition claims of such administrator in the ordinary course of

business.  In support of the Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within

the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local

Rule 9013-l(f) to the entry of a final order by the Court in connection with this Motion to the

extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States

Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a),

363(b), 507(a)(4), 507(a)(5), 541, 1107(a), and 1108 of Title 11 of the United States Code (the

"Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules").

DOCS_SF:101596.3 39566/001

## Background

**A.    Case Background**

4.    On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in these chapter 11 cases.

5.    A more detailed description of the business and operations of the Debtors, and the events leading to the commencement of these chapter 11 cases, is provided in the *Declaration of David M. Baker in Support of First Day Motions* (the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference.[2]

**B.    Company Workforce**

6.    The Company employs over 2,000 employees (the "Employees").  The Debtors employ approximately 240 full-time Employees and approximately 1,770 part-time Employees.  Substantially all of the Employees are employed by iPic-Gold Class Entertainment, LLC while iPic Media, LLC has approximately 11 Employees.  The Company also utilizes the services of 25 independent contractors (the "Independent Contractors").  Except as otherwise noted, the Debtors provide the Benefit Programs to full-time Employees.

---

[2]  Capitalized term used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

7.      The Independent Contractors provide a variety of specialized and industry-specific services that relate to sales of on-screen advertising, liquor revenue management, new theater openings, musical performances, and entertainers.

8.      The majority of the Employees and Independent Contractors rely exclusively on their compensation and benefits to pay their daily living expenses and to support their families.  If the Debtors are not permitted to continue to pay wages and salaries, provide employee benefits, and maintain benefit programs in the ordinary course of business, certain of the Employees and Independent Contractors will be exposed to significant financial constraints. Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

9.      As explained in more detail below, the Debtors seek authority to pay, in their discretion, any prepetition amounts owed for the programs and benefits described in this Motion up to the cap amounts set forth in the chart below.  The Debtors also seek authority to continue to pay amounts related to the programs described in this Motion in the ordinary course of business and in their discretion.

| EMPLOYEE BENEFIT/PROGRAM | CAP AMOUNT |
|---|---:|
| Wages | $3,300,000 |
| Commissions | $40,000 |
| ADP and Evention | $31,000 |
| Medical Plans | $150,000 |
| Dental Plan | $11,000 |
| Vision Plan | $3,500 |

| EMPLOYEE BENEFIT/PROGRAM | CAP AMOUNT |
|---|---|
| COBRA | $1,000 |
| Life and Disability Plan | $17,000 |
| Workers Compensation Plan | $80,000 |
| Retirement Plan Audit and Administrative Costs | $40,000 |
| Reimbursable Expenses | $8,000 |
| Corporate Cards | $225,000 |
| Independent Contractors | $100,000 |
| Other Employee Benefits | $5,000 |

C.    **Employee Compensation**

10.    Employee compensation is comprised of wages and salaries collectively, (the "Wages"). In addition to Wages, Employees are eligible to receive commission payments ("Commissions" and together with the Wages, the "Employee Compensation"). The average payroll of the Debtors is approximately $2,150,000 per pay period on account of Wages. The Debtors also pay approximately $26,000 per month in Commissions.

11.    Wages. Employees are paid Wages in arrears on a bi-weekly payroll schedule. Payrolls are processed and funded two business days prior to the applicable payroll date. Each Wednesday prior to the applicable payroll date, the Debtors' payroll processor debits the Debtors' payroll accounts and makes payroll distributions to Employees on the following Friday. The last payroll was paid on July 26, 2019, on account of Wages earned from July 5, 2019, through July 18, 2019. The next payroll date is Friday, August 9, 2019 with payroll funding to be instituted on Wednesday, August 7, 2019.

DOCS_SF:101596.3 39566/001

12.     Because Employees are paid in arrears, they are owed accrued and unpaid Wages as of the Petition Date.  As of the Petition Date, the Debtors estimate that they owe approximately $3,300,000 in the aggregate to the Employees on account of Wages for prepetition services.

13.     <u>Commissions</u>.  The Company maintains two sales commission plans.  The Company offers a compensation plan for certain Employees who provide event sales coordination services for event coordinators (the "<u>Event Sales Commission Plan</u>") and a compensation plan for Employees who sell memberships to guests (the "<u>Membership Sales Commission Plan</u>", and together with the Event Sales Commission Plan, the "<u>Sales Commission Plans</u>").[3]  Approximately 10 Employees participate in the Event Sales Commission Plan.  The Event Sales Commission Plan is designed to incentivize participating employees to sell events and manage large group bookings.  The Event Sales Commission Plan provides payments to participating Employees based on achieving the required sales metrics.

14.     All Employees participate in the Membership Sales Commission Plan. The Membership Sales Commission Plan is designed to incentivize Employees to maximize revenue from the sale of membership rewards to the Debtors' customers.  The Membership Sales Commission Plan provides a payment to the Employee of $3 per membership sold during the covered period.  The most recent Membership Sales Commission Plan payment of approximately

---

[3] A description of the Debtors' membership rewards program is described in the *Motion of Debtors for Entry of an Order (I) Authorizing Debtors to Honor Certain Prepetition Customer Programs in the Ordinary Course of Business; and (II) Granting Certain Related Relief* filed concurrently herewith.

$14,000 was paid on July 12, 2019, covering the period from June 1, 2019, through June 30, 2019.

15.    As of the Petition Date, the Debtors estimate that they are current with respect to Commissions owed under the Sales Commission Plans, although additional Commission amounts for July have accrued and will become payable postpetition. However, the Debtors have not conducted their final reconciliation of unpaid Commissions. By this Motion, the Debtors seek authorization, but not direction, to continue the Sales Commission Plans and pay any Commission amounts owed as of the Petition Date to the affected Employees in the ordinary course of business.

**D.    Payroll Administration and Evention Fees**

16.    The Debtors use Automatic Data Processing, Inc. ("ADP") to administer their payroll. As of the Petition Date, the Debtors believe that they owe approximately $30,000 to ADP in respect of prepetition costs and fees for these administrative services. The Debtors seek authority to pay all prepetition amounts owing to ADP in respect of these prepetition administrative services and to continue to make payments in respect of such fees in the ordinary course of business postpetition.

17.    The Debtors use Evention, LLC ("Evention") for tip and gratuity management software. As of the Petition Date, the Debtors believe that they owe approximately $500 to Evention in respect of prepetition costs and fees for these administrative services. The Debtors seek authority to pay all prepetition amounts owing to Evention in respect of these

7

prepetition administrative services and to continue to make payments in respect of such fees in the ordinary course of business postpetition.

**E.    Employee Benefits and Insurance Plans**

18.    The Debtors provide eligible Employees with several Benefit Programs, including (a) medical, dental, vision, life, and other insurance plans, (b) a 401(k) plan, and (c) other benefit plans.

(i)    Medical Plans

19.    The Debtors offer eligible Employees a choice of four different health insurance plans (collectively, the "Medical Plans") provided by Florida Blue. The costs of the Medical Plans are shared between the Debtors and the participating Employees through payroll withholding deductions. The Debtors provide Employees with a choice of three PPO programs with varying levels of coverage and premium amounts. The Debtors also offer an HMO health plan to their Florida Employees. Coverage costs under the Medical Plans range between $65 to $150 per pay period for single coverage and between $200 to $475 for Employee and family coverage. Employees may elect a variety of coverage options, including Employee-only, Employee/spouse, Employee/children, and Employee/family. Without the Medical Plans, the Employees would be forced to either forego health insurance coverage entirely or obtain potentially expensive out-of-pocket insurance coverage, which would likely adversely affect the Employees' morale. The average cost to the Debtors to maintain the Medical Plans, including administrative costs, premiums and Employee contributions, is approximately $140,000 per month. Premium amounts for the Medical Plans are paid on a monthly basis. As of the Petition

8

Date, the Debtors estimate that they are current on obligations associated with the Medical Plans.
By this Motion, the Debtors seek authorization, but not direction, to pay prepetition amounts due
on account of the Medical Plans, if any, and to continue the Medical Plans in the ordinary course
of business postpetition.

                (ii)     Dental Plan

       20.     The Debtors offer eligible Employees a dental insurance plan (the "Dental
Plan") administered by Humana. The Dental Plan coverage offers either HMO or PPO coverage.
The costs of the Dental Plan are also shared between the Debtors and the eligible Employees
through payroll withholding deductions. The average cost to the Debtors of maintaining the
Dental Plan, including administrative costs, premiums and Employee contributions, and
Employee contributions, is approximately $10,000 per month. As of the Petition Date, the
Debtors estimate they are current on obligations associated with the Dental Plan. By this
Motion, the Debtors seek authorization, but not direction, to pay prepetition amounts due on
account of the Dental Plan, if any, and to continue the Dental Plan in the ordinary course of
business postpetition.

                (iii)     Vision Plan

       21.     The Debtors offer eligible Employees vision care coverage (the "Vision
Plan") administered by Humana. The costs of the Vision Plan are shared by the Debtors and the
eligible Employees through paycheck withholding deductions. The average cost to the Debtors
of maintaining the Vision Plan, including administrative costs and premiums and Employee
contributions, is approximately $2,500 per month. As of the Petition Date, the Debtors estimate

9

that they are current on obligations associated with the Vision Plan.  By this Motion, the Debtors

seek authorization, but not direction, to pay prepetition amounts due on account of the Vision

Plan, if any, and to continue the Vision Plan in the ordinary course of business postpetition.

(iv)    Life and Disability Plans

22.    The Debtors provide their Employees with basic life insurance, accidental

death and dismemberment insurance, and short-term disability insurance (collectively, the "Life

and Disability Plans"), which are administered by Unum and Allstate.[4]  Coverage provided by

Unum includes life, disability, and accidental death and dismemberment insurance.  Coverage

provided by Allstate includes accident, critical illness, and gap insurance.  The Life and

Disability Plans are fully funded by the Debtors (except with respect to any supplemental

coverage that is paid by the Employees through paycheck withholding deductions).  In the

aggregate, the Debtors' average monthly cost of maintaining the Life and Disability Plans,

including administrative costs and premiums, is approximately $10,500 to Unum and $5,000 to

Allstate. As of the Petition Date, the Debtors estimate that they are current on obligations

associated with the Life and Disability Plans.  By this Motion, the Debtors seek authorization,

but not direction, to pay prepetition amounts due on account of the Life and Disability Plans, if

any, and to continue the Life and Disability Plans in the ordinary course of business postpetition.

(v)    Paid Time Off and Sick Time

---

[4] Employees may purchase additional voluntary life insurance, voluntary accidental death and dismemberment insurance, long-term disability, major medical complement insurance, and accident coverage/critical injury protection at their own expense.

DOCS_SF:101596.3 39566/001

23.     The Company grants paid time off to full-time Employees, which includes vacation and sick time ("PTO"). [5] PTO for current full-time Employees is capped at two or three weeks depending on an Employee's length of service. Employees in certain states are able to carry forward PTO into a subsequent year in accordance with applicable state law. In accordance with applicable state law, the Company pays all accrued PTO to Employees upon termination. As of the Petition Date, the accrued liabilities of the Debtors with respect to PTO is estimated to be approximately $360,000. The Debtors seek authority to allow Employees to use accrued prepetition PTO time after the Petition Date in the Debtors' discretion. The Debtors seek authority to pay out any PTO owed to Employees who become separated from the Debtors postpetition to the extent required under applicable state law.

(vi)     Workers' Compensation Plan

24.     The Debtors provide all eligible Employees with workers' compensation insurance (the "Workers' Compensation Plan") as required by federal and state law. The Workers' Compensation Plan is a policy-based plan provided by Travelers Property Casualty Company of America.[6] The average annual cost of maintaining the Workers' Compensation Plan, including administrative costs and premiums, is approximately $874,000 in the aggregate. As of the Petition Date, the Debtors believe they are current with their obligations under the Workers' Compensation Plan. By this Motion, the Debtors seek authorization, but not direction,

---

[5] In addition to PTO, the Debtors provide holiday pay for their Employees. The Debtors provide PTO to part-time Employees to the extent required under applicable state law with respect to sick leave. Part-time employees also receive holiday pay if they work on Thanksgiving or Christmas days.

[6] The Debtors' insurance policies are more fully set forth in the *Motion of the Debtors for Order (A) Authorizing the Debtors to (I) Maintain and Renew Existing Insurance Policies; (II) Continue Insurance Premium Financing Programs; (III) Pay Insurance Premium Finance Obligations Arising Thereunder; and (B) Authorizing Financial Institutions to Honor All Obligations Related Thereto* filed concurrently herewith.

11

to satisfy all obligations related to the Workers' Compensation Plan, including, without limitation, prepetition amounts due, premiums, financings, deductibles, and any related fees, costs, and expenses, and to continue their Workers' Compensation Plan in the ordinary course.

25.     The Debtors submit that the continuance of the Workers' Compensation Plan is appropriate in the ordinary course of business, but out of abundance of caution, seek authority to maintain the Workers' Compensation Plan in accordance with applicable law postpetition. The Debtors also seek authority for relief from the automatic stay solely to allow holders of workers' compensation claims to proceed with their claims in accordance with the Workers' Compensation Plan and to allow the Workers Compensation Plan insurer to administer, handle, defend, settle and/or pay a claim covered by the Workers' Compensation Plan and the cost related hereto in accordance with such plan.

(vii)    COBRA

26.     Pursuant to the requirements of the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), the Debtors provide temporary continuation of healthcare benefits at group rates to former Employees after their termination, retirement, or disability leave.  The former Employees bear all costs associated with their coverage under COBRA.  The Debtors incur administrative fees relating to COBRA of approximately $100 per month.  The Debtors request that former Employees and eligible dependents retain the right to coverage under the Medical Plans in accordance with the requirements of the terms of COBRA and request authorization to pay obligations (if any) arising under such plans, regardless of when such obligations accrued.

12

(viii)    Retirement Plan

27.    The Debtors allow eligible Employees to participate in a 401(k) plan (the

"Retirement Plan").  Andrew Loehrer serves as the trustee of the Retirement Plan.  The

Retirement Plan is funded by Employees through payroll withholding deductions.  The Debtors

do not match Employee contributions.  The annual administrative cost of the Retirement Plan to

the Debtors is approximately $55,000.  The annual audit fee associated with the Retirement Plan

is approximately $12,000 and is due in October 2019.  The annual audit is conducted by

Morrison, Brown, Argiz & Farra, LLC.  The Debtors seek authorization to continue to pay

prepetition amounts due on account of the Retirement Plan, including any audit or advisory fees,

and to continue to pay postpetition costs of the Retirement Plan in the ordinary course of

business.

(ix)    Other Employee Benefits

28.    The Debtors provide eligible Employees with a number of other

miscellaneous benefits (the "Other Employee Benefits"), which include an employee assistance

program and travel assistance program.  The Debtors also offer access to flexible spending

accounts, Employees discounts for food and non-alcoholic beverage purchases, free movie

tickets, and ADP LifeMart discounts (which provide shipping discounts on nationally recognized

brand-name products and services).[7]  In the aggregate, the average monthly cost of maintaining

the Other Employee Benefits – to the extent the Other Employee Benefits require payment from

the Debtors – may total up to $5,000.  The Debtors seek authorization, but not direction, to pay

---

[7] Part-time Employees are also eligible to receive Employee discounts and ADP LifeMart discounts.

prepetition amounts due on account of the Other Employee Benefits, and to continue the Other

Employee Benefits in the ordinary course of business postpetition.

**F.**    **Reimbursable Expenses and Corporate Credit Cards**

29.    Prior to the Petition Date, the Debtors reimbursed Employees for

Reimbursable Expenses incurred on behalf of the Debtors in the scope of their duties.  The

Reimbursable Expenses are incurred in the ordinary course of the Debtors' business operations

and include, without limitation, expenses for meals, travel, office supplies, and other business-

related expenses.  All Reimbursable Expenses must be approved by a member of management.

Historically, the Debtors have paid approximately $4,000 in the aggregate on account of

Reimbursable Expenses each month.  As of the Petition Date, the Debtors estimate that they owe

approximately $5,000 in Reimbursable Expenses.  Although the Debtors have requested that

Employees submit reimbursement requests promptly, Employees may nonetheless submit

reimbursement requests for prepetition Reimbursable Expenses after the Petition Date.  Absent

authority to pay the Reimbursable Expenses incurred prepetition, the Employees could be

obligated to pay such amounts out of their personal funds.  The Debtors therefore seek authority

to pay all outstanding prepetition Reimbursable Expenses, to pay any amounts on account of

administrative services relating to the processing of the Reimbursable Expenses, and to continue

the foregoing expense reimbursement policy in the ordinary course of business.

30.    The Debtors also maintain a corporate credit card program ("Corporate

Cards") with JPMorgan Chase Bank, NA ("Chase").  The Debtors pay Chase directly for the

business-related expenses charged by Employees using the Corporate Cards.  All expenses

14

charged to Corporate Cards must be approved by an appropriate manager. Unapproved amounts charged to the Corporate Cards are paid by the Employee. Historically, the Debtors have paid approximately $200,000 per month under the Corporate Card program. The failure to pay the Corporate Cards could result in Chase denying further charges and use of the Corporate Cards, and Employees could be required to pay for the Debtors' business expenses from their own personal funds. The Debtors seek authority to pay any amounts arising under the Corporate Cards prior to the Petition Date. In addition, the Debtors seek authority, in their sole discretion, to continue their prepetition practices with respect to the use and payment of Corporate Cards in the ordinary course of business and to pay all prepetition expenses outstanding in connection with the Corporate Cards.

## G.      **Withholding Obligations**

31.     The Debtors routinely deduct amounts from Employees' compensation with respect to certain Withholding Obligations, including, but not limited to, various federal, state, and local income taxes, wage garnishments, and Employee funded insurance premiums (the "Employee Tax Withholdings"). The amount deducted and remitted by the Debtors in respect of Employee Tax Withholdings is approximately $370,000 per pay period.

32.     The Debtors are also responsible for remitting to their various benefit administrators, for their own account, various taxes and fees associated with payroll pursuant to the Federal Insurance Contributions Act and federal and state laws regarding unemployment and disability taxes (the "Payroll Taxes"). On average, the Debtors pay approximately $300,000 in the aggregate for employer-obligated Payroll Taxes each pay period.

15

33.    The Debtors seek authority to deduct and remit all outstanding prepetition Employee Tax Withholdings and Payroll Taxes, and to continue to deduct and remit all owed Employee Tax Withholdings and all owed Payroll Taxes to the appropriate third party recipients in the ordinary course of business.

**H.    Independent Contractors**

34.    As noted above, the Debtors rely on the continued use of the Independent Contractors for specialized services that are not provided by the Employees.  If the Debtors are unable to continue their relationships with and pay the Independent Contractors, the continuity of the Debtors' business operations will be substantially impaired.

35.    Independent Contractors are paid in arrears and, as such, are owed accrued but unpaid compensation.  Prepetition, the Debtors pay approximately $50,000 on average to the Independent Contractors on a monthly basis.  As of the Petition Date, the Debtors estimate that they owe approximately $100,000 in the aggregate to the Independent Contractors for prepetition services.  By this Motion, the Debtors seek authorization, but not direction, to pay the outstanding amounts owed to Independent Contractors as of the Petition Date, and to continue to pay postpetition amounts due to the Independent Contractors in the ordinary course of business.

**I.    Direction to Banks and Financial Institutions**

36.    The Debtors also seek an order authorizing their banks and other financial institutions (collectively, the "Banks") to receive, process, honor, and pay all of the Debtors' prepetition checks and fund transfers on account of any prepetition amounts owed on account of the Benefit Programs, including all checks issued with regard to any Benefit Programs, and

16

prohibiting the Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for prepetition Benefit Programs obligations. The Debtors also seek an order authorizing them to issue new postpetition checks or effect new postpetition fund transfers on account of prepetition Benefit Programs obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected, and to reimburse, at their sole discretion, Employees and Independent Contractors for any fees or expenses incurred in connection with any rejected checks as a result of the Debtors' bankruptcy filing.

### Relief Requested

37.    By this Motion, the Debtors request entry an order substantially in the form attached hereto as **Exhibit A** (a) authorizing, but not directing, the Debtors to (i) to pay all prepetition amounts on account of Employee Compensation, Reimbursable Expenses, Independent Contractors, and  Benefit Programs, as set forth in this Motion; and (ii) continue to pay postpetition Employee Compensation, Independent Contractors, and Reimbursable Expenses and maintain and continue to honor the Benefit Programs as they were in effect as of the Petition Date and as such may be modified, amended, or supplemented from time to time in the ordinary course of business; and (b) authorizing the Banks to honor and process check and electronic transfer requests for payment of prepetition obligations with respect to Employee Compensation, Independent Contractors, Reimbursable Expenses, and the Benefit Programs. The Debtors do not seek authority to pay any Employees on account of Employee Compensation in excess of the statutory cap of $13,650.

17

38.     The Debtors submit that any delay in paying the prepetition amount owed

in respect of the Employee Compensation, Reimbursable Expenses, and Benefit Programs will

adversely impact the Debtors' relationships with their workforce and could irreparably harm

employee morale and cooperation.

## Basis for Relief Requested

39.     Statutory support for the requested relief exists pursuant to

sections 105(a), 362(d), 363(b)(1) and (c)(1), and 507(a) of the Bankruptcy Code and the

"necessity of payment" doctrine (discussed *infra*).  Section 363(b)(1) of the Bankruptcy Code

authorizes a debtor in possession to use property of the estate other than in the ordinary course of

business after notice and a hearing.  Section 363(c) of the Bankruptcy Code authorizes a debtor

in possession to enter into transactions in the ordinary course of business without notice and a

hearing.  Section 105(a) of the Bankruptcy Code further provides, in pertinent part, that this

Court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of the Bankruptcy Code.

40.     The relief requested in this Motion is supported by the well-established

"necessity of payment" doctrine.[8]  The "necessity of payment" doctrine, which has been

embraced by the Third Circuit, "teaches no more than, if payment of a claim which arose prior to

reorganization is essential to the continued operation of the [business] during reorganization,

payment may be authorized even if it is made out of corpus."  *In re Lehigh & New England Ry.*

---

[8] The doctrine was first articulated by the Supreme Court in railroad reorganization cases, *see Miltenberger v. Logansport Ry.*, 106 U.S. 286 (1882), and it has been held to be equally applicable to non-railroad debtor cases. *See, e.g., Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (hotel); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (airline).

*Co.*, 657 F.2d 570, 581 (3d Cir. 1981). *See also In re Sharon Steel Corp.*, 159 B.R. 730, 737

(Bankr. W.D. Pa. 1993) (embracing "necessity of payment" doctrine and citing *Lehigh & New*

*England Ry. Co.* with approval). Similarly, the court in *In re Ionosphere Clubs, Inc.*, 98 B.R.

174 (Bankr. S.D.N.Y. 1989), stated that the "necessity of payment" doctrine "recognizes the

existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition

claims where such payment is essential to the continued operation of the debtor." *Id.* at 176. In

that case, the court permitted Eastern Air Lines, Inc., to pay its current employees' prepetition

wages, salaries, medical benefits, and business expense claims. Judge Lifland relied on his

equitable powers under section 105(a) of the Bankruptcy Code and, in particular, the "necessity

of payment" doctrine to authorize such payments, recognizing that the debtor had to make the

payments in order to retain its current employees and maintain positive employee morale – two

factors that he deemed critical to the rehabilitation of an operating debtor. *Id.* at 176-77 (*citing*

H.R. Rep. No. 595 95th Cong. 1st Sess. 16 (1977)). Other courts also have found that the

"necessity of payment" doctrine applies to the payment of prepetition employee compensation

and benefits. *See In re Chateaugay Corp.*, 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (under the

"necessity of payment" doctrine, bankruptcy court should defer to the debtor's business

judgment in permitting payment of certain workers' compensation claims).

        41.     This Court similarly has approved the payment of prepetition claims of

employees for wages, salaries, expenses, and benefits on the grounds that the payment of such

claims was necessary to effectuate a successful reorganization or liquidation. *See, e.g, In re*

*Fuse, LLC*, Case No. 19-10872 (KG) (Bankr. D. Del June 5, 2019); *In re J & M Sales, Inc., et*

19

*al.*, Case No. 18-11801 (LSS) (Bankr. D. Del Aug. 27, 2018); *In re Aquion Energy Inc.*, Case

No. 17-10500 (KJC) (Bankr. D. Del March 10, 2017); *In re Basic Energy Services, Inc., et al.*,

Case No. 16-12320 (KJC) (Bankr. D. Del. October 26, 2016); *In re Key Energy Services, Inc., et

al.*, Case 16-12306 (BLS) (Bankr. D. Del. October 25, 2016); *In re Malibu Lighting

Corporation, et al.*, Case No. 15-12082 (KG) (Bankr. D Del. October 9, 2015); *In re Ablest, Inc.*,

Case No. 14-10717 (KJC) (Bankr. D. Del. Apr. 2, 2014); *In re iBAHN Corporation*, Case No.

13-12285 (PJW) (Bankr. D. Del. Sept. 9, 2013); *In re Highway Technologies, Inc.*, Case No. 13-

11326 (KJC) (Bankr. D. Del. May 23, 2013); and *In re Digital Domain Media Group, Inc.*, Case

No. 12-12568 (BLS) (Bankr. D. Del. Oct. 22, 2012).

42.    The "necessity of payment" doctrine authorizes the Debtors to pay the

amounts it seeks authority to pay pursuant to this Motion because the Employees and

Independent Contractors are critical assets necessary both to the Debtors' operations and the

successful administration of these chapter 11 cases.

43.    The Debtors believe that all of the Employee Compensation relating to the

period prior to the Petition Date constitute priority claims under sections 507(a)(4) of the

Bankruptcy Code.  As priority claims, the Employee Compensation must be paid in full before

any general unsecured obligations of the Debtors may be satisfied.  Accordingly, the relief

requested may affect only the timing of the payment of these priority obligations and will not

prejudice the rights of general unsecured creditors or other parties in interest.

44.    Moreover, the Debtors believe that if they are unable to honor accrued

Employee Compensation and benefits under the Benefit Programs described above, including

honoring PTO, employee morale and loyalty will be jeopardized at a time when employee

support is critical. The Debtors believe that any uncertainty with regard to continuation of

Employee Compensation and the Benefit Programs will cause significant anxiety at precisely the

time the Debtors need their Employees to perform their jobs at peak efficiency.

45.    Additionally, the Debtors submit that the Withholding Obligations do not

constitute property of the Debtors' estates and principally represent employee earnings that

governments, Employees, and/or judicial authorities, have designated for deduction from

Employee paychecks. The failure to transfer these withheld funds could result in hardship to

certain Employees. Moreover, if the Debtors cannot remit certain of these Withholding

Obligations, such as child support payments, the Employees may face legal action.

46.    The Debtors submit that with respect to the wage-related taxes that

constitute "trust fund" taxes, the payment of such taxes will not prejudice other creditors of the

Debtors' estate given that the relevant taxing authorities would have a priority claim under

section 507(a)(8) of the Bankruptcy Code in respect of such obligations. Moreover, the monies

payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third

parties, such as withheld funds with respect to the Retirement Plan, are not property of the

Debtors' estates. *See, e.g., Begier v. IRS*, 496 U.S. 53 (1990) (withholding taxes are property

held by a debtor in trust for another and, as such, are not property of the debtor's estates).

47.    Courts have also authorized debtors to pay employee-related taxes under

section 363(b)(1) of the Bankruptcy Code, which provides that "the trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

21

estate." 11 U.S.C. § 363(b)(1).   Under such section, a court may authorize a debtor to pay

certain prepetition claims.  *See In re FV Steel & Wire Co.*, Case No. 04-22421 (Bankr. E.D. Wis.

Feb. 26, 2004) (authorizing the continuation of customer programs and the payment of

prepetition claims under section 363 of the Bankruptcy Code); *In re UAL Corp.*, Case No. 02-

48191 (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under section

363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction); *Ionosphere Clubs*, 98

B.R. at 175 (affirming lower court order authorizing payment of prepetition wages pursuant to

section 363(b) of the Bankruptcy Code).  To do so, "the debtor must articulate some business

justification, other than the mere appeasement of major creditors." *Id.* at 175.  As discussed

herein, the Debtors' failure to pay employee-related taxes could have a material adverse impact

on their ability to operate in the ordinary course of business.

48.    Indeed, in numerous chapter 11 cases, this Court has exercised its

equitable powers under section 105 of the Bankruptcy Code to authorize debtors to pay a variety

of prepetition claims of creditors, including claims similar to the prepetition employee-related

taxes. *See, e.g., In re Fuse, LLC*, Case No. 19-10872 (KG) (Bankr. D. Del Jun. 5, 2019); *In re J*

*& M Sales, Inc., et al.*, Case No. 18-11801 (LSS) (Bankr. D. Del Aug. 27, 2018); *In re Aquion*

*Energy Inc.,* Case No. 17-10500 (KJC) (Bankr. D. Del March 10, 2017); *In re Basic Energy*

*Services, Inc., et al.*, Case No. 16-12320 (KJC) (Bankr. D. Del. October 26, 2016); *In re Key*

*Energy Services, Inc., et al.*, Case 16-12306 (BLS) (Bankr. D. Del. October 25, 2016); *In re*

*Malibu Lighting Corporation, et al.*, Case No. 15-12082 (KG) (Bankr. D Del. October 9, 2015);

*In re Savient Pharmaceuticals, Inc.*, Case No. 13-12680, ECF No. 44 (MFW) (Bankr. D. Del.

22

Oct. 16, 2013); *In re Furniture Brands Int'l, Inc.*, Case No. 13-12329, ECF No. 71 (CSS) (Sept.

11, 2013); *In re Exide Technologies*, Case No. 13-11482, ECF No. 71 (KJC) (Bankr. D. Del.

June 11, 2013); *In re Synagro Technologies, Inc.*, Case No. 13-11041 (BLS), ECF No. 43

(Bankr. D. Del. Apr. 25, 2013).  The Debtors submit that the present circumstances warrant

similar relief in these chapter 11 cases to preserve the Debtors' assets and avoid business

interruption.

      49.      Finally, the Employees have an intimate knowledge of the operation of the

Debtors' business and are critical components to the success of these chapter 11 cases.

Deterioration in the morale and welfare of the Employees at this critical time undoubtedly would

adversely impact the Debtors and their ability to maximize the value of their assets.  Payment of

prepetition Employee Compensation, Reimbursable Expenses, Independent Contractors and

continuation of the Benefit Programs, as described herein, is necessary to maintain the

Employees' morale during the cases and to insure continued, efficient operation in order to

maximize value for the estates.

### Reservation of Rights

      50.      Nothing contained herein is intended or should be construed as an

admission as to the validity of any claim against the Debtors and their estates, a waiver of the

rights of the Debtors and their estates to dispute any claim, or an approval or assumption of any

agreement or contract under section 365 of the Bankruptcy Code.  The Debtors and their estates

expressly reserve their rights to dispute any claim under applicable non-bankruptcy law.

Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's

order is not intended and should not be construed as an admission as to the validity of any claim

or a waiver of the rights of the Debtors and their estates to subsequently dispute such claim.

### Satisfaction of Bankruptcy Rules 6003 and 6004

51.     Pursuant to Bankruptcy Rule 6003(b), "a motion to pay all or part of a

claim that arose before the filing of the petition" shall not be granted by the Court within 21 days

of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and

irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described more fully above,

and as supported by the First Day Declaration, and to the extent that the relief requested herein

implicates Bankruptcy Rule 6003(b), the Debtors submit that the requirements of Bankruptcy

Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid

immediate and irreparable harm.

52.     Finally, to implement the foregoing successfully, the Debtors seek a

waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of

an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the

extent these rules are applicable.

### Notice

53.     Notice of this Motion shall be given to the following parties or, in lieu

thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel for

Debtors' pre-petition and postpetition lenders; and (c) the Debtors' thirty largest unsecured

creditors on a consolidated basis. As the Motion is seeking "first day" relief, within two business

days after the hearing on the Motion, the Debtors will serve copies of the Motion and any order

24

entered respecting the Motion as required by Del. Bankr. LR 9013-1(m).  The Debtors submit

that, in light of the nature of the relief requested, no other or further notice need be given.

## Conclusion

WHEREFORE, the Debtors respectfully request entry of the proposed order,

substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and

such other and further relief as is just.

Dated:    Augusts 5, 2019                    PACHULSKI STANG ZIEHL & JONES LLP


                                            */s/ Peter J. Keane*
                                            Jeffrey N. Pomerantz (CA Bar No. 143717)
                                            Debra I. Grassgreen (CA Bar No. 169978)
                                            Peter J. Keane (DE Bar No. 5503)
                                            919 N. Market Street, 17th Floor
                                            P.O. Box 8705
                                            Wilmington, DE 19899 (Courier 19801)
                                            Telephone:  (302) 652-4100
                                            Facsimile:  (302) 652-4400
                                            E-mail:      jpomerantz@pszjlaw.com
                                                         dgrassgreen@pszjlaw.com
                                                         pkeane@pszjlaw.com

                                            *Proposed Attorneys for Debtors and Debtors in
                                            Possession*

DOCS_SF:101596.3 39566/001

**EXHIBIT A**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| iPic-Gold Class Holdings LLC, *et al.*,[1] | Case No. 19-11739 (___) |
| Debtors. | (Joint Administration Requested) |

### ORDER (I) AUTHORIZING DEBTORS TO (A) PAY AND HONOR PREPETITION COMPENSATION, REIMBURSABLE BUSINESS EXPENSES, AND EMPLOYEE BENEFIT OBLIGATIONS, AND (B) MAINTAIN AND CONTINUE CERTAIN COMPENSATION AND BENEFIT PROGRAMS POSTPETITION; AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion ("Motion")[2] of the above-referenced debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases for the entry of an order (the "Order"), pursuant to sections 105(a), 363, and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), to authorize, but not require, the Debtors to (i) pay prepetition wages, salaries, commissions, employee benefits, and other compensation; and pay independent contractors; (ii) remit withholding obligations and deductions; (iii) maintain employee compensation and benefits programs and pay related administrative obligations; and (iv) to authorize applicable banks and other financial institutions receive, process, honor, and pay certain checks presented for payment and honor certain fund transfer requests; and it appearing that the relief requested is in the best interest of the Debtors' estates, their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: iPic Entertainment Inc. (9582); iPic-Gold Class Entertainment, LLC (4684); iPic Gold Class Holdings LLC (6315); iPic Media, LLC (0150); iPic Texas, LLC (N/A); and Delray Beach Holdings, LLC (1035). The Debtors' principal place of business is 433 Plaza Real, Suite 335, Boca Raton, FL 33432.

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28

U.S.C. § 157(b)(2); and it appearing that the requirements of Rule 6003 of the Federal Rules of

Bankruptcy Procedure have been satisfied; and due and adequate notice of the Motion having

been given under the circumstances; and after due deliberation and cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to make payments to

applicable third parties from the Employee Tax Withholdings, Payroll Taxes and Withholding

Obligations and in respect of the Benefit Programs, and costs associated therewith, in accordance

with the Debtors' ordinary course of business and stated policies, as set forth in the Motion.

3.      The Debtors are authorized, but not directed, to honor outstanding checks

for Employee Compensation that may be outstanding as of the Petition Date.

4.      In accordance with this Order and any other order of this Court, the banks

and financial institutions at which the Debtors maintain their accounts are authorized to honor

checks presented for payment, whether issued prior to or after the Petition Date, and to honor all

fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are

on deposit in such accounts.

5.      The Debtors are authorized to pay prepetition amounts on account of

Employee Compensation, Reimbursable Expenses, Independent Contractors and Benefit

Programs, including all processing and administrative fees associated with payment of the

foregoing, subject to the aggregate caps set forth in the chart below, *provided however*, that no

2

payments to or on behalf of any Employee with respect to Employee Compensation will exceed

$13,650:

| EMPLOYEE BENEFIT/PROGRAM | CAP AMOUNT |
|---|---|
| Wages | $3,300,000 |
| Commissions | $40,000 |
| ADP and Evention | $31,000 |
| Medical Plans | $150,000 |
| Dental Plan | $11,000 |
| Vision Plan | $3,500 |
| COBRA | $1,000 |
| Life and Disability Plan | $17,000 |
| Workers Compensation Plan | $80,000 |
| Retirement Plan Audit and Administrative Costs | $40,000 |
| Reimbursable Expenses | $8,000 |
| Corporate Cards | $225,000 |
| Independent Contractors | $100,000 |
| Other Employee Benefits | $5,000 |

      6.      The Debtors are authorized to allow Employees to use accrued prepetition

PTO in the Debtors' discretion.  The Debtors also authorized, in their discretion, to pay out any

accrued PTO amounts that are owed to Employees to the extent required under applicable state

law.

      7.      The Debtors are authorized to continue to administer and provide their

Benefit Programs postpetition in the ordinary course of business and in the Debtors' discretion.

3

8.      Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

9.      Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Order, any authorization contained in this Order, or any claim for which payment is authorized hereunder, shall be subject to any orders of this Court approving any debtor in possession financing for, or any use of cash collateral by, the Debtors, and any documents providing for such debtor in possession financing and any budget governing such debtor in possession financing and use of cash collateral.

10.     The Debtors are authorized, but not directed, to continue to maintain their Workers' Compensation Plan in the ordinary course of business.  The automatic stay is hereby modified pursuant to section 362(d) of the Bankruptcy Code solely to allow the Debtors, in their discretion, to continue to assess, determine, and adjudicate any of the unpaid workers' compensation claims during these chapter 11 cases in accordance with the Workers' Compensation Plan; *provided however*, however that nothing in this order or the Motion gives a non-workers' compensation claimant relief from the automatic stay.

11.     Notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004, the terms and conditions of this Order shall be immediately effective and enforceable.  The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the Motion or otherwise deemed waived.  To the extent the 14-day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Order, such stay is hereby waived.

4

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a).

13.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14.     Notwithstanding anything to the contrary contained herein, any payment to be made or authorization contained hereunder shall not be deemed to constitute postpetition assumption or adoption of any contract, program, or policy pursuant to section 365 of the Bankruptcy Code and shall not affect the Debtors' rights to contest the amount or validity of claims.

15.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE

DOCS_SF:101596.3 39566/001