IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iPic-Gold Class Entertainment LLC, *et al.*,[1] | Case No. 19-11739 (LSS) |
| Debtors. | (Jointly Administered) |

**Objection Deadline: September 4, 2019 at 4:00 p.m. (ET)**
**Hearing Date: September 11, 2019 at 11:00 a.m. (ET)**

### DEBTORS' MOTION TO RETAIN FTI CONSULTING, INC. TO (I) PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (II) DESIGNATE WILLIAM J. NOLAN AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this motion (the "Motion") for the entry of an order approving the letter agreement dated August 5, 2019 (the "Engagement Agreement")[2] by and between the Debtors and FTI Consulting, Inc. ("FTI"), *nunc pro tunc* to the commencement of these cases. Pursuant to the Engagement Agreement, William J. Nolan ("Mr. Nolan") will serve as the Chief Restructuring Officer ("CRO") of the Debtors, and additional individuals (the "Additional Personnel") will provide other services to the Debtors in support of the CRO. In support of this Motion, the Debtors submit the declaration of William J. Nolan (the "Nolan Declaration") annexed hereto as **Exhibit B**, and further represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: iPic Entertainment Inc. (9582); iPic-Gold Class Entertainment, LLC (4684); iPic Gold Class Holdings LLC (6315); iPic Media, LLC (0150); iPic Texas, LLC (N/A); and Delray Beach Holdings, LLC (1035). The Debtors' principal place of business is 433 Plaza Real, Suite 335, Boca Raton, FL 33432.

[2] A true and correct copy of the Engagement Agreement is attached hereto as **Exhibit A**.

DOCS_SF:101601.7 39566/001

### Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

### Relief Requested

3. By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request the entry of an order, substantially in the form of **Exhibit C** (the "Proposed Order") attached hereto, authorizing the Debtors to (i) retain and employ FTI to provide the Debtors with a CRO and Additional Personnel and (ii) designate William Nolan as CRO, *nunc pro tunc* to the Petition Date.

### Background

4. On August 5, 2019 (the "Petition Date"), the Debtors commenced these cases (the "Cases") by each filing a voluntary petition for relief under chapter 11 of the

Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in the Debtors' chapter 11 Cases. On August 14, 2019, the Office of the United States Trustee appointed a committee of unsecured creditors and appointed five (5) members thereto.

6. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of David M. Baker in Support of First Day Motions* [Docket No. 4] (the "First Day Declaration") filed on the Petition Date and fully incorporated herein by reference.[3]

7. Based on the complexities associated with administering chapter 11 cases, the Debtors have determined that they require the assistance of a CRO with the support of Additional Personnel with specialized experience in bankruptcy and financial advisory services. The Debtors hired Aurora Management Partners ("AMP") on or about June 24, 2019, to serve as their financial advisor. A few weeks thereafter, The Debtors' secured lenders informed them that the secured lenders would only agree to provide additional financing if the Debtors retained a CRO. Although the Debtors proposed that David Baker of AMP serve as the CRO, this was not acceptable to the secured lenders. As the Debtors commenced preparation for the filing of their chapter 11 cases, the Debtors and the secured lenders continued to discuss the appointment of a

---

[3] Capitalized term used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

CRO acceptable to both parties. Ultimately the parties reached agreement on retention of Mr. Nolan as the CRO on the eve of the filing of the Debtors' chapter 11 cases.

8. Accordingly, the Debtors seek to retain Mr. Nolan as CRO and Additional Personnel from FTI because, among other things, the Debtors understand Mr. Nolan and FTI have substantial experience in providing financial consulting services in distressed scenarios and enjoy an excellent reputation for services they have rendered in large and complex chapter 11 cases on behalf of debtors and creditors.

9. The Debtors have determined that the retention of Mr. Nolan as CRO with the support of Additional Personnel from FTI is necessary and appropriate, and is in the best interests of the Debtors' estates due to Mr. Nolan's and FTI's expertise and qualifications in performing the analyses required in these particular Cases and for the reasons enumerated herein. In selecting Mr. Nolan as CRO with the support of Additional Personnel from FTI, the Debtors sought an advisor with experience in providing similar services in complex chapter 11 cases. Mr. Nolan is well qualified to serve as the Debtors' CRO. The Additional Personnel of FTI also are experienced in providing services that are important to the Debtors during these Cases. As such, the Debtors believe that FTI is well qualified to assist Mr. Nolan in a cost-effective, efficient and timely manner.

10. Because FTI only recently began providing services to the Debtor under its Engagement Agreement dated August 5, 2019, FTI will continue to coordinate with the other professionals retained in these bankruptcy cases, including with AMP. As explained below, AMP was engaged by the Debtors prepetition and is currently providing them with transitional

financial advisory services on particular matters that AMP can accomplish most cost-effectively, given both AMP's familiarity with the Debtors and its institutional knowledge of the Debtors' operations.

### Mr. Nolan's Qualification

11. Mr. Nolan has more than 25 years of financial consulting and management experience, including financial and operational restructuring, loan workouts and business planning. Prior to its acquisition by FTI, Mr. Nolan served as a partner in the U.S. division of PwC's Business Recovery Services group. Prior to joining PwC, Mr. Nolan held an executive financial management position with the Pizza Hut division of PepsiCo. Mr. Nolan has considerable experience working with senior management teams in the areas of financial and operational restructuring, loan workouts and business planning. He has assisted management in developing business plans, devising short to medium term financial strategies and projections for use in troubled debt restructures, and implementing controls over cash expenditures, overhead and operating costs.

12. Mr. Nolan's diverse background extends into financial services; manufacturing; restaurants; healthcare, and real estate wherein he has served as advisor to companies, and advised secured creditors, and unsecured creditors' committees in out-of-court and in bankruptcy distressed situations. Mr. Nolan also has extensive mortgage banking experience and has been active in the reorganization of many nonbank mortgage companies. Mr. Nolan holds an M.B.A. in finance from the Wharton School of Business at the University of Pennsylvania and a B.S. in economics from the University of Delaware.

DOCS_SF:101601.7 39566/001

13. FTI has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors and creditors throughout the United States. Among many other examples, FTI has provided (a) restructuring and turnaround advisory services to clients including: Sports Authority; Corinthian Colleges; Residential Capital; MF Global; Orleans Homes; Oakwood Homes; Rex Energy; Tops Holding II Corporation; Claire's Stores Inc.; Perkins & Marie Callender's Inc.; Waypoint Leasing Holdings, Inc. and Sizmek, Inc.; and (b) financial advisory services to the lenders or unsecured creditors of such companies as Stearns Lending; Walter Investments; Ditech Holdings Corporation; Aceto Corporation; Mortgage Lenders Network; Advanta Corporation; PG&E Corporation; FirstEnergy Solutions Corporation; Sears Holdings Corporation; FTD Companies, Inc. and EXCO Resources.

**Scope of Services**

14. Subject to approval by the Court, the Debtors propose to retain FTI to provide Mr. Nolan as CRO and to provide the Additional Personnel on the terms and conditions set forth in the Engagement Agreement, except as otherwise explicitly set forth herein or in any order granting this Motion.

15. Mr. Nolan will have the powers and responsibilities necessary to perform his duties as CRO and such other duties as those set forth in the Engagement Agreement, including serving as a temporary officer of the Debtors. Mr. Nolan and the Additional Personnel shall report directly to the Debtors' Board of Directors. Mr. Nolan shall not, however, have authority to hire or fire employees or professionals, enter into, or terminate, material contracts,

approve of a sale of the Debtors' assets or approve of a plan of reorganization without express written consent of the Board of Directors. Among other things, Mr. Nolan and the Additional Personnel will provide the following management and advisory assistance to the Debtors:[4]

    a. Evaluate established cash forecasting and liquidity management and implement liquidity management reporting procedures;

    b. Assist the Debtors in daily cash management and in preparing, reviewing and reporting on a 13- week cash flow forecast;

    c. Gather and analyze data, interview appropriate management and evaluate the Debtors' existing financial forecasts and budgets to determine the financial performance of the Debtors;

    d. Assist the Debtors in preparing, updating, and delivering all information required or requested under the loan agreements and other governing documents;

    e. Assist the Debtors' management in responding to requests from lenders and other creditors and investors, as requested;

    f. Assist in the development of a business plan (including detailed financial projections) with management, which plan may be shared with creditors, lessors and investors;

    g. Evaluate and develop with the Debtors and their advisors analyses and presentations with respect to strategic alternatives being considered by the Debtors;

    h. Assist Debtors' counsel and other advisors in the design and presentation of proposals to creditors, lessors and investors regarding terms of potential restructuring/reorganization of the Debtors;

    i. Provide testimony in the Chapter 11 proceedings, as necessary; and

    j. As requested, assist the Debtors in providing periodic status reports to the Debtors' Board of Directors, senior management and creditor constituents.

---

[4] The summaries of the Engagement Agreement contained in this Motion are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Agreement, the terms of the Engagement Agreement shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Agreement.

DOCS_SF:101601.7 39566/001

16. The Debtors submit that the foregoing services are necessary to enable the Debtors to maximize the value of their estates.

### FTI's Disinterestedness

17. Although Mr. Nolan and the Additional Personnel are being approved to render the services described in the Engagement Agreement under section 363 of the Bankruptcy Code, the Debtors submit that the employment requirements of section 327(a) applicable to retained estate professionals are not applicable in this situation. However, as more fully set forth in the Nolan Declaration, FTI is currently undertaking efforts to determine whether it has any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Nolan Declaration, FTI: (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. FTI will supplement any disclosures as necessary after its conflicts review is completed.

18. In the ninety (90) days prior to the Petition Date, FTI received no payments for professional services performed for the Debtors. FTI has not received a retainer in these Cases.

19. In addition, as set forth in the Nolan Declaration, if any new material facts or relationships are discovered or arise, FTI will provide the Court with a supplemental declaration.

## Terms of Retention

20. In accordance with the terms of the Engagement Agreement, FTI will be paid by the Debtors a monthly flat fee of $160,000 for the services of Mr. Nolan as CRO.[5]

21. For services rendered by Additional Personnel, the Debtors will pay FTI for such services at the current hourly rates of the Additional Personnel as follows:

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $895 – $1195 |
| Directors / Senior Directors / Managing Directors | $670 - $880 |
| Consultants/Senior Consultants | $355 - $640 |
| Administrative / Paraprofessionals | $145 - $275 |

22. FTI is seeking a limited waiver from maintaining time records as set forth in Local Rule 2016-2 in connection with the services to be rendered pursuant to the Engagement Letter to permit FTI to record its time in half-hour increments.

23. In addition, as set forth in the Engagement Agreement, the Debtors will reimburse FTI for its reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided under the Engagement Agreement. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, lodging and meals, pre-approved computer and research charges, and reasonable attorney fees.

---

[5] The monthly fee of $160,000 is a discounted fee that is less than what the Debtors would incur if FTI were to bill on an hourly basis for Mr. Nolan's services.

24. To the best of Debtors' knowledge, the compensation arrangement reflected in the Engagement Agreement is consistent with, and typical of, arrangements entered into by FTI and other restructuring and consulting firms with respect to rendering similar services for clients such as the Debtors.

**Indemnification**

25. As a material part of the consideration for which the Additional Personnel have agreed to provide the services described herein, pursuant to the Engagement Agreement, the Debtors have agreed to indemnify and hold harmless FTI, its affiliates, officers, directors, principals, shareholders, agents, independent contractors, and employees (collectively, the "Indemnified Parties").[6] The rights to indemnification shall survive the termination or expiration of the Engagement Agreement.

26. The Debtors believe the indemnity provisions are a reasonable term and condition of FTI's engagement and were, along with all terms of the Engagement Agreement, negotiated by the Debtors and FTI at arm's-length and in good faith. FTI and the Debtors believe that the indemnification provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to FTI and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Agreement, viewed in conjunction with the other terms

---

[6] As fully set forth in section 6.1 of the Engagement Agreement, the indemnification provision generally provides that the Debtors will indemnify and hold harmless FTI and the other Indemnified Parties from and against all claims, liabilities, losses, expenses, and damages arising out of or in connection with the engagement of FTI that is the subject of the Engagement Agreement, except to the extent finally determined by a court of competent jurisdiction to have resulted from an Indemnified Party's own willful misconduct or gross negligence.

10

of FTI's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors.

### Reporting Requirements

27. To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (sometimes referred to as the "Jay Alix Protocol" or the "Protocol"), FTI intends to file with the Court and serve on the Debtors, the U.S. Trustee and any statutory committee(s) appointed in these cases (collectively, the "Committee" and, together with the Debtors and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 30th of each month for the previous month, which report would include the names and functions filled by all FTI personnel assigned to this engagement. The Staffing Report would be subject to review by the Court in the event so requested by any of the Notice Parties.

28. Given the numerous issues that the Additional Personnel may be required to address in the performance of their services, FTI's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Agreement are reasonable.

### No Duplication of Services

29. As noted above, the Debtors are also filing an application to retain AMP to provide transitional financial advisory services in these Cases. The Engagement Agreement is dated as of August 5, 2019, and Mr. Nolan has only been the CRO of the Debtors for a short

period of time. By contrast, AMP has provided financial advisory services since June 24, 2019, and is familiar with the Debtors and their operations. By way of example, based on its historical experience and developed expertise, the Debtors believe that AMP is best positioned to, among other things: (i) assist the Debtors with compiling and addressing inquiries concerning the Initial Debtor Interview examination conducted on August 13, 2019; (ii) preparation of the initial and monthly operating reports; (iii) preparing the Debtors' Schedules and Statements of Financial Affairs; and (iv) working with FTI in preparing the Debtors' ongoing cash flow model and related cash management tasks.

30. Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors will assure that there is no duplication of efforts on the part of AMP and FTI with respect to the services to be provided to the Debtors. FTI will work collaboratively with the Debtors, AMP, and other professionals to avoid duplication of services among professionals.

### Basis for Relief Requested

31. The Debtors seek approval of the employment of FTI pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32. Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

33. The retention of FTI and its professionals is a sound exercise of the Debtors' business judgment. Mr. Nolan has extensive experience as a senior officer, as a fiduciary, and as an advisor for many troubled companies. The Debtors believe that FTI will provide services that benefit the Debtors' estates and creditors. In light of the foregoing, the Debtors believe that the retention of FTI is appropriate and in the best interests of the Debtors and their estates and creditors.

34. Courts recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business. *See, e.g., In re Nine W. Holdings, Inc.*, 2018 Bankr. LEXIS 1998 (Bankr. D. Del. 2018); *In re The Weinstein Company Holdings*, Case No. 18-10601 (MWF) (Bankr. D. Del. Apr. 24, 2018); *In re VRG Liquidating, LLC*, Case No. 16-10971 (LSS) (Bankr. D. Del. Sept.

DOCS_SF:101601.7 39566/001

2016); *In re Fresh & Easy, LLC*, Case No. 15-12220 (BLS) (Bankr. D. Del. 2015); *In re Landauer Healthcare Holdings, Inc.*, Case No. 13-12098 (LSS) (Bankr. D. Del. 2013); *In re Spheris Inc.*, Case No. 10-10352 (KG) (Bankr. D. Del. 2010). To the extent such approval is required here, it should be granted for the reasons set forth above.

    35. The indemnification provisions are reasonable under the circumstances and reflect market conditions, and accordingly should be approved under section 328 of the Bankruptcy Code. *See, e.g., In re United Artists Theatre Co. v. Walton*, No. 01-1351, 315 F.3d 217 (3rd Cir. 2003) (approving indemnification for investment banker and financial advisor where the indemnity clause, including a carve out for gross negligence, was "reasonable" and therefore, permissible under the Bankruptcy Code). Courts in this jurisdiction have approved similar provisions to the indemnification provisions in other chapter 11 cases. *See, e.g., In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, No. 13-11565 (LSS) (Bankr. D. Del. July 15, 2013); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011); *In re Int'l Aluminum Corp.*, No. 10-10003 (MFW) (Bankr. D. Del. Jan. 27, 2010).

    36. Based upon the foregoing, the Debtors submit that the retention of FTI and the designation of Mr. Nolan as CRO on the terms set forth herein and in the Engagement

Agreement is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in these Cases.

### Notice

37.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel for the Debtors' pre-petition and postpetition Lenders; (c) proposed counsel to the official committee of unsecured creditors appointed in these Cases; and (d) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

38.     No prior request for the relief sought in the Motion has been made to this Court or any other court.

*[remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order granting the relief requested and any other relief as is just and proper.

Dated:  August 15, 2019

iPic-Gold Class Entertainment, LLC, et al.

_____
Hamid Hashemi
Chief Executive Officer