# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>iPic-Gold Class Entertainment, LLC, *et al.*,[1]<br><br>                     Debtors. | Chapter 11<br><br>Case No. 19-11739 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: June 3, 2020 at 10:00 a.m. (ET)**<br>**Response Deadline: May 27, 2020 at 4:00 p.m. (ET)** |

**EMPLOYEES' RETIREMENT SYSTEM OF ALABAMA AND TEACHERS' RETIREMENT SYSTEM OF ALABAMA'S FIRST (1ST) OMNIBUS (SUBSTANTIVE) OBJECTION TO SECTION 503(B)(9) CLAIMS PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1**

> **Claimants receiving this Objection should locate their name(s) and claim number(s) on Exhibit A to the Proposed Order attached to this Objection to learn the grounds for the objection pertaining to their claim(s) and the relief being sought.**
>
> **Please be aware that if you filed a proof of claim against the Debtors that is identified on any of the Exhibits attached to this Objection, your claim is being objected to through this Objection. This Objection thus directly affects your rights, and your claim may be reclassified, reduced, modified, disallowed, expunged, or eliminated by the relief sought in this Objection or any further objection that may be filed.**
>
> **The relief sought herein is without prejudice to any party in interest's right to pursue further substantive or non-substantive objections against the claims listed on Exhibit A to the Proposed Order attached to this Objection.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: iPic Entertainment Inc. (9582); iPic-Gold Class Entertainment, LLC (4684); iPic Gold Class Holdings LLC (6315); iPic Media, LLC (0150); iPic Texas, LLC (N/A); and Delray Beach Holdings, LLC (1035). The Debtors' principal place of business is 433 Plaza Real, Suite 335, Boca Raton, FL 33432.

43259402 v7

The Employees' Retirement System of Alabama and Teachers' Retirement System of Alabama (together, "RSA") object, pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the classification of all or any portion of each of the proofs of claim filed against the above-captioned debtors (the "Debtors") that are listed on Exhibit A to the proposed form of order (the "Proposed Order") attached hereto as Exhibit 2 (collectively, the "Disputed Claims") and request that the Disputed Claims be modified and reclassified as set forth on Exhibit A to the Proposed Order. In support of this Objection, RSA relies on the Declaration of Sandy Karp (the "Karp Declaration"), a copy of which is attached hereto as Exhibit 1. In further support of this Objection, RSA respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. RSA consents to entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory and legal predicates for the relief sought herein are Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1.

### FACTUAL AND PROCEDURAL BACKGROUND

4.       On August 5, 2019, the above-captioned debtors (the "Debtors") commenced these jointly administered chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") by filing a voluntary petition for relief under the Bankruptcy Code.

5.       The Debtors were a leading provider of polished-casual dining in a luxury theater auditorium environment. The Debtors were one of the largest combined movie theater and restaurant entertainment destinations with locations that provide a luxurious movie-going experience at an affordable price. The Debtors provided customers with high-quality, chef-driven culinary and mixology in unique destinations that include premium movie theaters, restaurants and lounges.

6.       A detailed description of the Debtors and their business is set forth in the *Declaration of David M. Baker in Support of First Day Motions* [Docket No. 4], incorporated herein by reference.

**A.    The DIP Facility and Sale**

7.       RSA is the Debtors' prepetition senior secured lender,[2] DIP lender and largest unsecured creditor in these cases by virtue of its deficiency claim. As a creditor, RSA is a "party in interest" with standing to object to the Disputed Claims under 11 U.S.C. § 502(a).

8.       On September 26, 2019, the Court entered the *Final Order: (A) Authorizing*

---

[2] As stipulated by the Debtors in the Final DIP Order, as of the Petition Date, the Debtors were justly and lawfully indebted and liable to RSA under the Pre-Petition Loan Documents (as defined in the Final DIP Order) for term loans in the outstanding principal amount of $205,340,772.

*Debtors in Possession to (I) Obtain Postpetition Financing Pursuant to U.S.C. Sections 105, 362, 363, and 364, (II) Grant Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. Section 364; (III) Use Cash Collateral, and (IV) Provide Adequate Protection to Prepetition Credit Parties, (B) Modifying Automatic Stay Pursuant to 11 U.S.C. Sections 361, 362, 363, and 364* [Docket No. 322] (the "<u>Final DIP Order</u>"), authorizing the Debtors to obtain up to $16,000,000 in new money debtor-in-possession financing provided by RSA (the "<u>DIP Financing</u>").

9. On August 15, 2019, the Debtors filed a sale motion seeking approval of bidding procedures and to authorization sell substantially all of their assets and assume and assign certain unexpired leases and executory contracts [Docket No. 104] (the "<u>Sale Motion</u>").

10. Pursuant to the approved bidding procedures, on October 17, 2019, the Debtors conducted an auction. An affiliate of RSA—iPic Theaters, LLC (the "<u>Buyer</u>") was declared the Successful Bidder with a credit bid of $50.85 million (net of certain adjustments). *See* Docket No. 416.

11. After a hearing, on October 29, 2019, the Court entered an order [Docket No. 470] (the "<u>Sale Order</u>") approving the sale to the Buyer. The sale closed on November 15, 2019 [Docket No. 524].

12. As of the filing of this Objection, approximately 252 proofs of claim were filed in these chapter 11 cases. The proofs of claim are recorded on the official claims register maintained by Stretto, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases.

**B.    The Delray Lease and EcoStruction, LLC and Empire Office, Inc.**

13. Debtor iPic-Gold Class Entertainment, LLC and Delray Beach 4th & 5th Avenue, LLC ("<u>Delray</u>") were parties to a certain lease for Suite 400 (the "<u>Office</u>") of the real property

located at 25 SE 4th Ave., Delray Beach, FL 33483, dated May 16, 2017 (as amended from time to time, the "Office Lease").

14. EcoStruction, LLC ("EcoStruction") and Empire Office, Inc. ("Empire Office") were contractors performing construction services and installing construction materials and office furnishings in the Office, which was anticipated to be, at some point in the future, the Debtors' corporate offices.

15. The Debtors ordered services and materials from Empire Office by a purchase order dated November 14, 2018, and amendments thereto, and a subsequent purchase order dated March 21, 2019, and amendments thereto. Empire Office then issued invoices beginning in May through as recently as September 11, 2019. Among the items Empire Office invoiced the Debtors for were labor, freight, storage, and the delivery and installation of glass doors, "L"-shaped and "U"-shaped desks, and privacy-enhancing "Smart Film" in glass partitions.

16. EcoStruction provided services and goods to the Debtors pursuant to a certain contract, dated April 19, 2019, between Debtor iPic-Gold Class Entertainment, LLC and EcoStruction, and issued invoices beginning with that date through as recently as August 2, 2019. Among the items EcoStruction invoiced the Debtors for were project management, general labor, fireproofing, wet area waterproofing, and cleanings. EcoStruction also furnished and installed interior glazing, flooring, and acoustical ceiling tile.

17. EcoStruction and Empire Office have no prior business relationship with the Debtors and provided no goods or services to the Debtors at any time outside of their work related to the Office build-out.

18. The Office Lease was deemed rejected on November 15, 2019, pursuant to a Court-approved stipulation between the Debtors, the Buyer, RSA, and Delray [Docket No. 539, Ex. A ¶ 1].

19. EcoStruction and Empire Office each filed proofs of claim asserting entitlement to administrative expense claims under Section 503(b)(9) of the Bankruptcy Code for goods provided in the 20-day period prior to the Petition Date. On December 30, 2019, EcoStruction filed a *Motion for Allowance and Immediate Payment of Administrative Claim Under 11 U.S.C. § 503(b)(9)* (the "EcoStruction Motion") [Docket No. 596].

## REQUESTED RELIEF

20. By this Objection, RSA seeks entry of an order, pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007, Local Rule 3007-1 modifying and reclassifying the priority of the Disputed Claims as set forth on Exhibit A to the Proposed Order. In accordance with Local Rule 3007-1(e)(i)(E), RSA believes that this Objection complies in all material respects with Local Rule 3007-1.

## OBJECTION

21. Section 503(b)(9) of the Bankruptcy Code provides for the allowance, as an administrative expense, of a claim equal to "the value of any goods received by the debtor within 20 days before the date of commencement of a case under [title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). (emphasis added).

22. A claimant seeking allowance of an administrative claim pursuant to Section 503(b)(9) must establish: (1) the vendor sold "goods" to the debtor; (2) the goods were received by the debtor within twenty days prior to the filing; and (3) the goods were sold to the debtor in the ordinary course of the debtor's business. *In re Goody's Family Clothing, Inc.,*

401 B.R. 131, 133 (Bankr. D. Del. 2009). An administrative expense claimant bears the burden of establishing that its claim qualifies for priority status. *Id.* at 137 n.27.

A. **EcoStruction and Empire Office did not Sell Goods to the Debtors in the Ordinary Course of the Debtor's Business**

23. EcoStruction is a contractor that provided services and supplied construction materials to the Debtors in connection with the build-out of the Delray corporate office. Similarly, Empire Office sold office furniture and provided installation services, also in connection with the build-out of the Delray corporate office. Neither had any ongoing business relationship with the Debtors or supplied goods used by the Debtors in the ordinary course of their luxury theater and fine-dining business. Both were one-time creditors of the Debtors related to the Delray office project, which was never completed or utilized by the Debtors. This is outside the purview of Section 503(b)(9), which provides protection to vendors that sold goods in the ordinary course of *the Debtors' theater and restaurant business* to support the financially troubled Debtors' operations during the Twenty Day period.

24. Administrative expenses listed in Section 503(b) are discrete exceptions to the general equality principle of the Bankruptcy Code. "As such, they must be strictly construed and be 'clearly authorized by Congress.'" *Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc. (In re Momenta, Inc.)*, Case No. 11-cv-479-SM, 2012 U.S. Dist. LEXIS 122615, at *11 (D.N.H. Aug. 29 2012) (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.,* 547 U.S. 651, 655 (2006)).

25. Strict construal of this provision requires a focus on the language used in the statute. Section 503(b)(9) places the emphasis on the ordinary course of the <u>debtor's</u> business, in contrast to reclamation rights under section 546(c)(1) which emphasize the <u>seller's</u> business:

> subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545,

> 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in **the ordinary course of such seller's business**, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title . . . .

11 U.S.C. § 546(c)(1).  The contrast is instructive with respect to the different aims of each provision.  Section 546(c)(1) is intended to protect the seller only, and allow reclamation of goods that have not yet been sold by an insolvent debtor, subject to superior lienholders.  Section 503(b)(9) protects sellers without respect to lienholders, but its dual purpose is to help debtors by encouraging vendors to continue extending credit to and doing business with debtors during the crucial 20-day period leading up to a potential chapter 11 filing.  *See, e.g.*, *In re Arts Dairy, LLC*, 414 B.R. 219, 220 (Bankr. N.D. Ohio 2009) ("[Section 503(b)(9)] seeks to encourage trade creditors to continue to extend credit to a debtor potentially heading for bankruptcy.").  Additionally, by focusing on the value of goods that have already been sold and were purchased in the ordinary course of the debtor's business, Section 503(b)(9) protects the debtor by providing an avenue of redress for the type of trade creditor the debtor must often maintain a relationship with to survive as a going concern.  This compromise is staked out by the focus on the "debtor's business": a seller can only take advantage of Section 503(b)(9) if the goods were of a type that the debtor required in its common business practices, not one-time purchases from entities unnecessary to maintain relationships with post-petition or post-emergence.

26. The Debtors purchased items common to movie theater chains in the ordinary course of their movie theater business, items like concessions and cleaning supplies, from vendors who are appropriate claimants under Section 503(b)(9).  However, the items in proof of claim 131, filed by EcoStruction, LLC, and proof of claim 176, filed by Empire Office, Inc., were not regularly supplied by vendors for maintaining the Debtors' business; they were instead purchases from independent contractors related to a single discrete office space construction project (which

was never completed or ever used by the Debtors). Upon the completion of the projects, there was no need to maintain a business relationship of the type protected by Section 503(b)(9), and whether the goods were sold in the ordinary course of the seller's business is immaterial for Section 503(b)(9) analysis. The bankruptcy interest of maintaining business relationships between a debtor and the vendors it will need most to obtain credit from post-petition and post-emergence is not served by placing the Disputed Claims within the ambit of Section 503(b)(9).

27. In its motion, EcoStruction incorrectly ignores the plain language of the statute and argues that the "ordinary course" requirement of Section 503(b)(9) is met since its practices are ordinary in "the construction industry." *Id.* But, as noted above, only 11 U.S.C. § 546(c) explicitly looks at the seller's business; Congress made a difference choice when it focused on a "debtor's business" for Section 503(b)(9). The Debtors are not a construction business, they are a high-end movie theater and fine-dining business. EcoStruction's practices in the world of construction are entirely immaterial for Section 503(b)(9) analysis, and the same is true for any similar argument Empire Office, Inc. could assert.

28. Accordingly, the Disputed Claims of EcoStruction, LLC and Empire Office, Inc. listed on Exhibit A are unenforceable against the Debtors as claims entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code. RSA requests that the Court modify and reclassify each claim identified on Exhibit A to the Proposed Order so as to disallow administrative priority to each claim in full.

**B.    The Disputed Claims Include Amounts Not Based on the Sale of Goods**

29. RSA also objects to the Disputed Claims listed on Exhibit A to the Proposed Order because portions of the Disputed Claims are not based upon the sale of "goods."

30. An administrative priority claim under Section 503(b)(9) is limited to the provision of goods. The definition of "goods" set forth in Article 2 of the U.C.C. applies for Section 503(b)(9) purposes. It states, in relevant part:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.

U.C.C. § 2-105; *see also In re NE OPCO, Inc.,* 501 B.R. 233, 241 (Bankr. D. Del. 2013) (CSS). Accordingly, the portion of a Section 503(b)(9) claim which is for labor, such as installation, or for freight should be reclassified and modified as unsecured. *See, e.g.*, *In re SRC Liquidation, LLC*, 573 B.R. 537 (Bankr. D. Del. 2017) (disallowing administrative priority for the portion of a Section 503(b)(9) claim that was for shipping charges).

31. A portion of the Disputed Claims listed on Exhibit A to the Proposed Order are not based on the delivery of goods. Instead, the claims are for services, labor, delivery, and freight, among other things. For example: (a) in proof of claim 131, filed by EcoStruction, LLC, item # CO No. 23 lists "Spray Applied Insulation" in the amount of $11,672.50, the claim does not separate the cost of the "goods" of the insulation from the labor cost of applying the insulation; (b) in proof of claim 176, filed by Empire Office, Inc., on page 54 of invoice #394031, line 186, the claimant lists "LABOR—DELIVERY AND INSTALLATION" in the amount of $77,000; and (c) in proof of claim 204, filed by Tide Cleaners LLP-MW Cleaners EDIT TX, the claim is described in total as "services provided for Laundry & Dry Cleaning."

32. Accordingly, the portions of the Disputed Claims that are for services cannot be entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code. RSA requests that the Court modify and reclassify each claim identified on Exhibit A to the Proposed Order in the amount listed.

### C. Disputed Claims include Goods Received by the Debtors Outside of the Twenty Day Period

33. Additionally, RSA objects to each Disputed Claim to the extent that any goods were not received by the Debtors within twenty days prior to the Petition Date (the "Twenty Day Period"). For example: (a) proof of claim 131, filed by EcoStruction, LLC, does not include any work orders with documentation supporting when the purported goods were received by the Debtors; (b) proof of claim 176, filed by Empire Office, Inc., includes invoices and ship dates but does not establish when the purported goods were received by the Debtors; (c) proof of claim 156 filed by L.A. Specialty Corp., includes numerous entries for purchase orders ("P.O.s") issued before the 20-day period, without any detail as to the character of the goods included on the P.O.s beyond the description "Goods sold," and without any documentation supporting when the Debtors received the "goods";[3] (d) proof of claim 157, filed by Prime Line Distributors, Inc., includes twenty-one invoices issued outside the 20-day period without any documentation supporting when the Debtors received the goods; and (e) proof of claim 204, filed by Tide Cleaners LLP-MW Cleaners EDIT TX, apart from being entirely for services provided as noted *supra*, includes in its appended exhibit only three charges within the 20-day period, and without any documentation supporting when the Debtors received the services.

34. Accordingly, portions of the Disputed Claims listed on Exhibit A are unenforceable against the Debtors as claims entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code. RSA requests that the Court modify and reclassify the claims identified

---

[3] Claimant L.A. Specialty Corp's proof of claim asserts entitlement to an administrative claim under Section 503(b)(9) and also references the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. Section 499e(c)(2). Even assuming Claimant sold perishable agricultural commodities to the Debtors, Claimant did not preserve its interest in the statutory trust established by Section 5(c)(2) of PACA by including the language required by 7 U.S.C. Section 499e(c)(4) on the invoices it sent to the Debtors (and which are attached to its proof of claim), and did not otherwise take action to preserve its interest by providing written notice under 7 U.S.C. Section 499e(c)(3).

on Exhibit A to the Proposed Order in the amount listed.

## RESERVATION OF RIGHTS

35.     RSA expressly reserves the right to amend, modify, or supplement this Objection. Should one or more of the grounds for this Objection be dismissed or overruled, RSA reserves the right to object to any Section 503(b)(9) Disputed Claim on any other ground.

36.     This motion is without prejudice to the rights of any other party in interest to object to any Disputed Claims listed on Exhibit A to the Proposed Order on any other ground.  The right to commence additional proceedings with respect to the claims that are subject to this Objection, including but not limited to proceedings under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code is also reserved.

## NOTICE

37.     RSA has provided notice of this Objection to (i) the United States Trustee; (ii) counsel to the Debtors; (iii) the holders of the Disputed Claims; and (iv) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested here, RSA submits that no other or further notice is necessary.

[LEFT INTENTIONALLY BLANK]

WHEREFORE, RSA respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit 2, sustaining this Objection in all respects and granting such other and further relief as the Court may deem just and proper.

Dated: April 23, 2020
Wilmington, Delaware

BURR & FORMAN LLP

/s/ *J. Cory Falgowski*
J. Cory Falgowski (DE No. 4546)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
Telephone: (302) 830-2312
Email: jfalgowski@burr.com

-and-

Jeffrey T. Baker (*pro hac vice*)
Derek F. Meek (*pro hac vice*)
420 20th Street N, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Email: jbaker@burr.com
dmeek@burr.com

*Counsel for Employees' Retirement System of Alabama and Teachers' Retirement System of Alabama*