**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iPic-Gold Class Entertainment, LLC, *et al.*,[1] | Case No. 19-11739 (LSS) |
| Debtors. | (Jointly Administered) |

Objection Deadline: May 12, 2020 at 4:00 p.m. (ET)
Hearing Date: May 19, 2020 at 3:00 p.m. (ET)

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) DISMISSING THE
CHAPTER 11 CASES; (II) IMPLEMENTING SETTLEMENT DISTRIBUTION; (III)
AUTHORIZING TRANSFER OF CERTAIN LITIGATION TO RSA; (IV)
AUTHORIZING THE ABANDONMENT OF CERTAIN PROPERTY; (V)
AUTHORIZING THE DISSOLUTION OF THE DEBTORS; (VI) TERMINATING
CLAIMS AND NOTICING SERVICES; AND (VII) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "Debtors"), in the above-captioned chapter 11 cases, move the Court (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Initial Order"): (a) implementing final fee application procedures; (b) implementing the Settlement Distribution (defined below); (c) authorizing transfer of certain litigation claims to RSA; (d) authorizing the Debtors to abandon or destroy books and records; (e) authorizing officers and appropriate corporate representatives of Debtor iPic Entertainment Inc. and its subsidiaries to dissolve under applicable state law; and, after certification of counsel that milestones described herein have been fully satisfied, entry of an order, substantially in the form attached hereto as **Exhibit B** (the "Dismissal Order"): (x) dismissing these chapter 11 cases (the "Chapter 11 Cases") subject to the conditions set forth

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: iPic Entertainment Inc. (9582); iPic-Gold Class Entertainment, LLC (4684); iPic Gold Class Holdings LLC (6315); iPic Media LLC (0150); iPic Texas, LLC (N/A); and Delray Beach Holdings, LLC (1035).  The Debtors' principal place of business is 433 Plaza Real, Suite 335, Boca Raton, FL 33432.

herein; (y) terminating the claims and noticing services of Stretto ("Stretto"); and (z) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## Preliminary Statement

1.      Following the Court-approved sale of substantially all of the Debtors' assets effectuated through a credit bid by their secured prepetition lenders, the Debtors are running out of cash and time and cannot remain in chapter 11 much longer.  Thus, the Debtors submit that dismissal of these chapter 11 cases and the distribution of their remaining cash on hand to creditors, is the most practical and cost-effective means to bring closure to the administration of the estates.

2.      The sale of the Debtors' assets closed on or about November 15, 2019.  The buyer of the Debtors' assets agreed to pay as part of a global settlement significant liabilities of the Debtors, including certain prepetition priority and administrative claims.  Specifically, the Court's entry of the sale order approved a term sheet settlement (the "Settlement") — attached as Exhibit 2 to the Sale Order and discussed in further detail below—whereby the Debtors' prepetition and DIP lender, RSA,[2] agreed to fund a limited amount of cash to pay, among other things, certain amounts to assist with the wind down of the Debtors' estates, including a capped section 503(b)(9) reserve and reserves for holders of priority claims. The Debtors are prepared to implement the Court-approved Settlement as part of dismissal of these cases.  The Debtors explored the possibility of proposing a plan with the RSA and the Committee, but the cash remaining in the estates is not sufficient to pay all priority claims in full and adequately fund a post-confirmation trust, and the administrative claims would continue to dissipate the recovery to priority claims unless the case is wound down promptly.

---

[2] Employees' Retirement System of Alabama and the Teachers' Retirement Systems of Alabama ("RSA").

3.      As a result of the sale, the Debtors believe that no unencumbered assets remain in the estates (other than avoidance and litigation claims that are not projected to yield sufficient funds to justify their projected costs to pursue), and there is no reasonable prospect of distributions to holders of unsecured claims (the amount of which the Debtors estimate to be in excess of $200 million, excluding unliquidated claims).  Without funding for a chapter 11 plan, the Debtors submit that dismissal is the most expeditious and cost-effective means of winding-down their affairs, along with distributing the Settlement amounts to creditors, and the destruction/abandonment of the unnecessary books and records as discussed below.

4.      The Debtors are simply out of money and cannot continue to administer their chapter 11 cases following the conclusion of the sale of substantially all of their assets.  The only alternative to dismissal would be conversion of the chapter 11 cases, which the Debtors believe would result in less distributions to creditors and significantly delay  the conclusion of these cases.  Based on the Debtors' analysis of filed administrative expense claims and priority claims, the Debtors believe they have sufficient funds from the Settlement to pay chapter 11 administrative claims and to make a pro rata distribution to priority creditors, according to the priorities of the Bankruptcy Code and in accordance with the funds dedicated to the claim categories by RSA.  The Debtors therefore request dismissal of these chapter 11 cases pursuant to the terms of the proposed Dismissal Order.

5.      Throughout these cases over the last several months following the closing of the sale, the Debtors have been in communication with RSA and the Committee to seek their input on various issues during the wind down process.  Importantly, the relief requested by this Motion is supported by both RSA and the Committee.

**Jurisdiction and Venue**

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue for this matter is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409.

8.      The statutory bases for the relief requested herein are sections 105(a), 305, 349, 363(b)(1), 554(a), and 1112(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 1017, 2002, 3003, 6007, and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 1017-2 and section 303 of Delaware Corporation Law.

DOCS_DE:227815.8 39566/002

## Background

**B.**     **General Background**

9.     On August 5, 2019 (the "Petition Date"), each Debtor commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.     No trustee or examiner has been appointed in these chapter 11 cases. On August 14, 2019, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

11.     Before the sale of their business, the Debtors were a leading provider of polished-casual dining in a luxury theater auditorium environment.  The Debtors were one of the largest combined movie theater and restaurant entertainment destinations with locations that provided a luxurious movie-going experience at an affordable price.  The Debtors provided customers with high-quality, chef-driven culinary and mixology in unique destinations that include premium movie theaters, restaurants and lounges.

12.     A more detailed description of the Debtors' business and operations, and the events leading to the commencement of these chapter 11 cases, is provided in the *Declaration of David M. Baker in Support First Day Motions* [Docket No. 4], and incorporated herein by reference.

**C.**     **The DIP Facility and Sale**

13.     On September 26, 2019, the Court entered the *Final Order: (A) Authorizing Debtors in Possession to (I) Obtain Postpetition Financing Pursuant to U.S.C. Sections 105, 362, 363, and 364, (II) Grant Liens and Superiority Claims to Postpetition*

*Lenders Pursuant to 11 U.S.C. Section 364; (III) Use Cash Collateral, and (IV) Provide Adequate Protection to Prepetition Credit Parties, (B) Modifying Automatic Stay Pursuant to 11 U.S.C. Sections 361, 362, 363, and 364* [Docket No. 322] (the "<u>Final DIP Order</u>"), authorizing the Debtors to obtain up to $16,000,000 in debtor-in-possession financing.  The Final DIP Order provided the Debtors with access to necessary funding to maintain their operations and satisfy administrative costs during these chapter 11 cases, while pursuing a sale of substantially all of their assets.

14.    On August 15, 2019, the Debtors filed a sale motion seeking approval of bidding procedures and to authorization to sell substantially all of their assets and assume and assign certain unexpired leases and executory contracts [Docket No. 104] (the "<u>Sale Motion</u>").

15.    Pursuant to the approved bidding procedures, on October 17, 2019, the Debtors conducted an auction.  An affiliate of RSA—iPic Theaters, LLC (the "<u>Buyer</u>") was declared the Successful Bidder with a credit bid of $50.85 million (net of certain adjustments). *See* Docket No. 416.   On October 24, 2019, following the auction, the Committee filed an objection to the Sale Motion on various grounds [Docket No. 448].

16.    In advance of the hearing to approval the sale, the Debtors, RSA and the Committee engaged in good faith negotiations to resolve the Committee's objections.  Those discussions resulted in the Settlement that was included in and approved as part of the Sale Order.

17.    After a hearing, on October 29, 2019, the Court entered an order [Docket No. 470] (the "<u>Sale Order</u>"): (a) approving the sale to the Buyer, pursuant to which the Buyer purchased substantially all of the Debtors' assets, assumed various unexpired leases and executory contracts, and assumed millions of dollars in liabilities that related to both the pre and

postpetition periods pursuant to an asset purchase agreement (the "APA"); and (b) approving the

Settlement to resolve the Committee's objection.  The sale closed on November 15, 2019

[Docket No. 524].  Pursuant to, inter alia, the Final DIP Order, the Debtors' cash on hand (except

for certain wind down funds paid at sale closing under Section 1(a) of the Settlement) constitutes

RSA's cash collateral and will be returned to RSA (or used, at RSA's direction) to fund RSA's

unfunded obligations under the Settlement).

### D.    **Settlement and Distribution**

18.    The Sale Order previously approved the Settlement among the Debtors,

RSA, and the Committee, attached as Exhibit 2 to the Sale Order.  The Settlement required RSA

to fund the payment of certain wind down expenses, professional fees, and certain amounts for

payment of various categories of claims, including the following:

> a.    RSA to pay up to $526,000 in § 503(b)(9) claims.
> b.    RSA to pay up to $150,000 to settle priority claims other than those associated with personal property taxes.
> c.    RSA to pay up to $450,000 in priority personal property tax liabilities.

19.    In connection with dismissal, the Debtors propose to use the funds

established under the previously approved Settlement for payment of the above-listed claim

categories to pay any remaining unpaid, timely-filed[3] claims consistent with the terms of the

Settlement, subject to any objections to such claims that may be filed and granted by the Court

(collectively, the "Settlement Distribution").  RSA is not receiving any part of the Settlement

Distribution on account of its unsecured deficiency claims.  However, as noted above, remaining

---

[3] The Debtors are not making any distribution to late-filed claims because such claims would be subordinated to timely-filed unsecured claims and general unsecured claims are not anticipated to receive any distribution after higher priority claims are paid (either in full or on a pro rata basis, consistent with the priorities of the Bankruptcy Code).

cash collateral will be distributed to RSA (or used, at RSA's direction, to fund RSA's unfunded obligations under the Settlement).

20.     A proposed distribution list is attached to this Motion as **Exhibit D** (the "Distribution List"). Certain of the claims listed on **Exhibit D** may be subject to disallowance or modification if objections are filed or the claimants and Debtors or RSA agree to an otherwise lower amount.  Accordingly, the claims listed on **Exhibit D** are subject to change.

**E.      The Claims Bar Date**

21.     On July 2, 2019, the Debtors filed the *Debtors' Motion for an Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 484], which set deadlines for creditors to file proofs of claim against the Debtors' estates.  On November 12, 2019, the Court approved the Bar Date Motion by entering the *Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 506] (the "Bar Date Order").  The Court set the bar date for claims against the Debtors' estates and, per the *Notice of Bar Dates for Filing Claims* [Docket No. 508], the general bar date was established as December 30, 2019 and the governmental bar date was established as February 3, 2020.

22.     After the bar dates, the Debtors and their advisors reviewed filed and scheduled administrative and priority claims and paid claims that they were authorized to pay by the Court or in connection with the sale.  The Debtors have also have worked with RSA and the Buyer to conduct diligence and address claims that are RSA's payment responsibility under the Settlement.  It is anticipated that RSA may file objections to select section 503(b)(9) and priority claims that appear to be facially invalid, and any such claims listed on the Distribution List attached as **Exhibit D** may be disallowed or modified based on such objections.

F.    **Authorizing Transfer of Litigation Rights to RSA**

23.    In connection with the proposed dismissal, the Debtors seek approval to transfer to RSA all of their rights in claims in litigation commenced by the Debtors against AMC Entertainment Holdings, Inc., AMC Entertainment, Inc., and American Multi-Cinema, Inc. (collectively, "AMC") and other defendants in Texas District Court, Harris County, case number 2015-68745 (the "AMC Litigation").  The Debtors previously obtained stay relief to permit an appeal in the AMC Litigation to be decided on appeal.  *See* Docket Nos, 129, 272.  The Debtors also: (a) have affirmative claims against Development Design Group, Incorporated in pending litigation in the Fifteenth Judicial Circuit Court, Palm Beach County, Florida, case number 502016CA011715 (the "DDG Litigation"); and (b) may have claims, solely to the extent provided for under the APA, related to the Payment Card Interchange Fee and Merchant Discount Antitrust Litigation pending in the United States District Court for the Eastern District of New York (the "Interchange Litigation, and together with the AMC Litigation and DDG Litigation, the "Litigation Rights").  The Debtors propose to transfer and assign all the Litigation Rights to the Buyer in exchange for $30,000, which amount may be paid to the Debtors from any excess funds currently held by the Debtors that would have otherwise been released to RSA in accordance with the terms of the Settlement.

24.    The Debtors believe this proposal is fair and reasonable in light of the circumstances of the cases and the proposed dismissal.  The Debtors are no longer operating a business and seek to wind down and dismiss the cases rather than pursue the litigation.

G.    **Debtors' Books and Records and other Assets**

25.    As of the Petition Date, the Debtors' estates maintained certain books and records, including, without limitation: (a) accounting documents; (b) bank documents; (c)

9

corporate governance documents; (d) documents related to contracts, leases and other contractual

agreements of the Debtors; (e) insurance documents; (f) human resources and other related

employment documents; (g) documents related to the chapter 11 cases; (h) customer lists; and (i)

electronic documents.

      26.     Pursuant to section 1.1(o) of the APA, substantially all such books and

records pertaining to the Debtors have been transferred to the Buyer.  To the extent that any

books and records remain with the Debtors' estates (collectively, the "<u>Books and Records</u>"),

however, the continued preservation of such Books and Records would be burden the Debtors'

estates with further administrative costs, and the destruction or abandonment of such Books and

Records is necessary for the resolution of the chapter 11 cases.  Because the Debtors do not have

any ongoing operations or available funds—and because the process of reconciling the asserted

administrative expense claims against the Debtors will be complete or otherwise provided for

upon the proposed dismissal of these chapter 11 cases—the abandonment and destruction of such

Books and Records would not be prejudicial to the Debtors' stakeholders or other parties in

interest.  The Debtors accordingly seek approval of the abandonment and destruction of any

remaining Books and Records in their possession pursuant to this Motion.

### H.    **Dissolution of the Debtors**

      27.     As noted above, the Debtors sold substantially all of their assets and no

longer have any employees, other than the CRO.  There are no business operations to run and the

only tasks of the Debtors' CRO has been winding down the estates. After completing the

administration of these estates and the wind down of their affairs, including the filing of 2020 tax

returns which is ongoing, there will be no need to maintain the corporate existence of the

Debtors as they will not have any business to operate or ability to generate revenue.  As a result, the Debtors will take the steps necessary to wind down in accordance with applicable state law.

28.     In addition, Debtor iPic Entertainment Inc. is a publicly owned corporation with the majority of its holders having no formal affiliation with the company (*i.e.*, more than 50% of the stock of the Parent Debtor is owned by various third parties).  Under Delaware state law, a corporation cannot dissolve without the consent of more than 50% of its shareholders.  The Debtors do not have the resources to hold a shareholder meeting for such a vote.  Plus, even if Debtor iPic Entertainment Inc. conducted such a meeting it is far from certain that a sufficient number of holders would participate in any vote to dissolve Debtor iPic Entertainment Inc. given that the equity interests in Debtor iPic Entertainment Inc. are worthless.  As a result, Debtor iPic Entertainment Inc. is seeking the Court's authorization to dissolve pursuant to section 303 of the Delaware Corporations Law, and to take any necessary steps to dissolve any of the other Debtors in accordance with applicable state law.

I.     **Stretto as Notice and Claims Agent**

29.     On August 5, 2019, the Debtors filed the *Debtors' Application for an Order (I) Authorizing and Approving Appointment of Stretto as Claims and Noticing Agent Nunc Pro Tunc to the Petition Date, and (II) Granting Related Relief* [Docket No. 6] seeking to retain Stretto as notice and claims agent. On August 6, 2019, the Court approved Stretto's retention application by entry of the *Order (I) Authorizing and Approving Appointment of Stretto as Claims and Noticing Agent Nunc Pro Tunc to the Petition Date, and (II) Granting Related Relief* [Docket No. 38].  Since its engagement, Stretto has effectively and efficiently handled the various noticing in these cases and managed the Debtors' claims register.

DOCS_DE:227815.8 39566/002

**J.        Payment of Professional Fees**

30.        On September 6, 2019, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 198] (the "Interim Compensation Order").  Pursuant to the Interim Compensation Order, the Court approved procedures governing applications for and payment of fees and expense requested by professionals.  All professionals retained in these chapter 11 cases will file final fee applications to be considered at an omnibus fee hearing to be scheduled by the Court.  The Debtors request that the Court retain jurisdiction to consider and rule on any final fee applications following entry of the Dismissal Order, to the extent necessary.

**Relief Requested**

31.        By this Motion, the Debtors request entry of the Initial Order, substantially in the form of **Exhibit A** hereto: (a) authorizing final fee application procedures; (b) implementing the previously-approved Settlement and distribution of funds; (c) authorizing the transfer of certain litigation to RSA; (d) authorizing the Debtors to abandon or destroy Books and Records; (e) authorizing officers and appropriate corporate representatives of the Debtors to dissolve under applicable state law; and, after certification of counsel that milestones described herein have been fully satisfied, entry of the Dismissal Order, substantially in the form of **Exhibit B** hereto: (x) dismissing these chapter 11 cases subject to the conditions set forth herein; (y) terminating Stretto as the claims and noticing agent; and (z) granting related relief.

**A.        Cause Exists to Dismiss These Chapter 11 Cases
Under Section 1112(b) of the Bankruptcy Code.**

32.        Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests

of creditors and the estate, for cause unless the court determines that the appointment … of a

trustee or examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1)

(emphasis added). The party seeking dismissal bears the burden to establish the requisite

"cause." *In re Riverbend Cmty., LLC*, No. 11-11771, 2012 WL 1030340, at *3 (Bankr. D. Del.

Mar. 23, 2012). In addition, "[t]he determination of cause under § 1112(b) is subject to judicial

discretion under the circumstances of each case." *In re Am. Capital Equip., LLC*, 688 F.3d 145,

161 (3d Cir. 2012) (quoting *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*,

749 F.2d 670, 674 (11th Cir. 1984)).

      33.    According to the Third Circuit, "[s]ection 1112(b) requires a two-step

process in which the court first determines whether there is 'cause' to convert or dismiss, and

next chooses between conversion and dismissal based on 'the best interest of creditors and the

estate.'" *Am. Capital Equip.*, 688 F.3d at 161 (quoting 11 U.S.C. § 1112(b)). Once "cause" is

established under section 1112(b) of the Bankruptcy Code (and assuming that the Court declines

to appoint a trustee or examiner), the Court *must* dismiss or convert the case unless (a) "the court

finds and specifically identifies unusual circumstances establishing that … dismissing the case is

not in the best interests of creditors and the estate;" (b) "there is reasonable likelihood that a plan

will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of

[the Bankruptcy Code], or if such sections do not apply, within a reasonable period of time;" and

(c) an objecting party establishes certain other enumerated statutory requirements.[4] 11 U.S.C.

§ 1112(b)(2); *see also In re Scarborough–St. James Corp.*, No. 15-10625, 2015 WL 5672628, at

---

[4] Specifically, a party opposing a motion to dismiss under section 1112(b) of the Bankruptcy Code also must
establish that "the grounds for converting or dismissing a case include an act or omission of the debtor other than
under paragraph (4)(A) [providing that cause for dismissal includes 'substantial or continuing loss to or diminution
of the estate and the absence of a reasonable likelihood of rehabilitation']—(i) for which there exists a reasonable
justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court."
11 U.S.C. § 1112(b)(2)(B).

*2 (Bankr. D. Del. Sept. 24, 2015) (except where these "limited circumstances" are present,

"[o]nce the Court finds that 'cause' exists, dismissal or conversion is necessary"); *Riverbend*

*Cmty.*, 2012 WL 1030340, at *3 ("Section 1112(b) is clear that the Court must dismiss or convert

Debtor's case if Movants establish 'cause,' which is defined in Section 1112(b)(4).  The only

'but' to the mandatory conversion or dismissal is if a debtor can prove the existence of 'unusual

circumstances specifically identified by the court' showing that dismissal or conversion is not in

the best interests of the creditors and the estate.") (internal citation omitted).

34.     Section 1112(b)(4) of the Bankruptcy Code lists several examples of

factors supporting a finding that "cause" exists within the meaning of section 1112(b)(1),

including where there is "substantial or continuing loss to or diminution of the estate and the

absence of a reasonable likelihood of rehabilitation" or "failure to … confirm a plan, within the

time fixed by [the Bankruptcy Code] or by order of the court."  11 U.S.C. § 1112(b)(4)(A), (J).

"As provided in the plain language of the Code, courts have held that if one of the grounds for

dismissal or conversion is § 1112(b)(4)(A) (substantial or continuing loss to or diminution of the

estate and the absence of a reasonable likelihood of rehabilitation), the § 1112(b) inquiry ends;

the case must be converted or dismissed."  *In re Korn*, 523 B.R. 453, 465 n.28 (Bankr. E.D. Pa.

2014) (collecting cases).

35.     This list of examples constituting "cause" for dismissal or conversion set

forth in section 1112(b)(4) of the Bankruptcy Code is non-exclusive, however, and "cause" also

may be found under circumstances not specifically addressed in that provision.  *See Am. Capital*

*Equip.*, 688 F.3d at 161 ("Section 1112(b) provides a non-exhaustive list of grounds for finding

'cause' to convert or dismiss.") (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 160

(3d Cir. 1999)); *Scarborough-St. James*, 2015 WL 5672628, at *2 ("'Cause' is a flexible

14

standard, and the examples listed in subsection (b)(4) are not exhaustive.") (citing *In re Inwood*

*Heights Hous. Dev. Fund Corp.*, No. 11-13322, 2011 WL 3793324, at *6 (Bankr. S.D.N.Y.

Aug. 25, 2011)); *Korn*, 523 B.R. at 464-65 ("The examples [of 'cause' set forth in section

1112(b)(4)] are illustrative and not exhaustive.") (citations omitted); *In re PM Cross, LLC*, 494

B.R. 607, 617 (Bankr. D.N.H. 2013) (section 1112(b)(4)'s list of factors constituting "cause" is

"not exclusive," and "the court may consider other factors as they arise and use its powers to

reach appropriate results in individual cases") (quoting *In re Gonic Realty Tr.*, 909 F.2d 624, 626

(1st Cir. 1990)).

36.      According to the Third Circuit, in addition to the factors specifically

enumerated in section 1112(b)(4) of the Bankruptcy Code, "[a] court may also find cause [under

section 1112(b)] where there is not 'a reasonable possibility of a successful reorganization within

a reasonable period of time.'"  *Am. Capital Equip.*, 688 F.3d at 162 (quoting *First Jersey Nat'l*

*Bank v. Brown (In re Brown)*, 951 F.2d 564, 572 (3d Cir. 1991)); *see also Anderson v.*

*Commonwealth Renewable Energy, Inc. (In re Commonwealth Renewable Energy, Inc.)*,

550 B.R. 279, 283 (Bankr. W.D. Pa. 2016) (same).  The Third Circuit also has stated that, even

though the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("*BAPCPA*")

modified the list of examples set forth in section 1112(b)(4) constituting "cause" for dismissal or

conversion – including by replacing the phrase "inability to effectuate a plan" with "inability to

effectuate substantial consummation of a confirmed plan" – post-BAPCPA, "the 'inability to

effectuate a plan' remains a viable basis for dismissal because the listed examples of cause are

not exhaustive."  *Id.* at 162 n.10 (citing *DCNC N.C. I, L.L.C. v. Wachovia Bank, N.A.*,

No. 09-3775, 2009 WL 3209728, at *5 (E.D. Pa. Oct. 5, 2009)) (quotation marks omitted).

DOCS_DE:227815.8 39566/002

37.    Here, the Debtors have sold substantially all of their assets in connection with the sale to the Buyer and no longer have ongoing operations.  The Debtors also are not aware of any material assets other than their minimal rapidly diminishing cash on hand and the RSA commitments to satisfy certain claims up to the amounts required under the Settlement. Therefore, the Debtors have no going concern value to preserve or property available to generate material and cost-effective value for the benefit of unsecured creditors (the claims of which the Debtors estimate to be in excess of $200 million, excluding unliquidated claims).

38.    Absent dismissal, the Debtors will continue to incur substantial chapter 11 administrative expenses with no available funds to pay such expenses.  The Debtors do not have sufficient cash to fund a chapter 11 plan.  The only alternative to dismissal – which is conversion of the cases to chapter 7 – is not in the estates' best interest because the commencement and conclusion of those proceedings would further exhaust the Debtors' remaining cash and cause delay.   Because the estates have only minimal assets, there would be no meaningful role for a chapter 7 trustee beyond distributing the remaining cash to creditors, which is what the Debtors intend to do through this Motion and within the parameters of the Settlement.  Thus, the Debtors believe that dismissal of these chapter 11 cases is the best means of achieving an orderly and efficient wind-up of their affairs, and cause exists to dismiss these cases pursuant to section 1112(b)(4) of the Bankruptcy Code.

**B.**    **Dismissal is in the Best Interest of the Debtors' Creditors and Their Estates.**

39.    Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must then evaluate whether dismissal is in the best interests of the debtor's creditors and the estate. *See, e.g.*, *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court

is required to consider this second question of whether to dismiss or convert.").  Dismissal of a chapter 11 bankruptcy case meets the "best interests of creditors" test where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated. *See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Tr. (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (reorganization to salvage business which ceased business was unfeasible).

40.    Here, the Debtors have nothing left to reorganize because substantially all of their assets and operations were sold pursuant to the Sale Order, and, other than the funds available for the Settlement Distribution, no other assets remain in the Debtors' estates for distributions to unsecured creditors pursuant to a chapter 11 plan or upon conversion to chapter 7, other than potential litigation claims that are not believed to be worthy of prosecution based on their projected costs and recovery prospects, as well as a lack of funding to pursue them.

41.    Additionally, a court may find dismissal to be in the "best interests of the creditors" where a debtor demonstrates the ability to oversee its own liquidation. *See Camden Ordinance*, 245 B.R. at 797-98; *Mazzocone*, 183 B.R. 402, 412 (Bankr. E.D. Pa. 1995) ("Only when a Chapter 11 debtor has no intention or ability to . . . perform its own liquidation . . . should a debtor be permitted to remain in bankruptcy . . . .").  Here, the Debtors have already liquidated their assets pursuant to the Sale Order and have otherwise demonstrated themselves to be capable of overseeing their own liquidation.

42.    Additionally, dismissal is appropriate because it will maximize the value of the Debtors' estates.  The alternative—conversion to a chapter 7 liquidation and appointment of a trustee—is unnecessary, would provide no likely benefit to unsecured creditors, and would impose significant additional administrative costs upon the Debtors' estates without any meaningful source of funds to satisfy such costs.  A chapter 7 trustee would distribute remaining

cash under the Settlement in the same manner, except available cash would be further depleted because a chapter 7 trustee would need to employ and pay professionals and the delay would expend more of that cash.  In addition, a chapter 7 trustee would investigate the propriety of litigation claims already investigated by the Committee.  As a result, creditors would not receive greater recoveries in a chapter 7 liquidation.

**C.**     **The Debtors are Not Deviating from the Priority Scheme.**

43. The proposed dismissal complies with applicable law governing distributions of estate property.  As stated by the Supreme Court, a final disposition "in connection with the dismissal of a Chapter 11 case cannot, without the consent of the affected parties, deviate from the basic priority rules." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978 (2017).

44. Here, both the Initial Order and Dismissal Order do not provide for the distribution of estate property except by way of: (a) the Settlement Distribution; and (b) the abandonment of Books and Records as addressed herein, which is consistent with applicable priorities under the Bankruptcy Code.

**D.**     **The Court Should Authorize the Dissolution of the Debtors.**

45. Because the Debtors have sold substantially all of their assets and ceased operations, the Debtors intend for their corporate entities to be dissolved as soon as reasonably practicable. It is appropriate and necessary for the Court to authorize the dissolution of the Debtors. The Debtors have no further business to conduct and no other purpose in remaining active as corporate entities in their respective jurisdictions. The Debtors may incur additional taxes and statutory fees owing to their continued corporate existence absent their prompt

dissolution. Accordingly, it is in the best interests of the Debtors' estates for the Debtors to dissolve as soon as practicable following entry of the Dismissal Order.

46.    Under Delaware General Corporate Law, bankruptcy courts are empowered as follows:

> (a) Any corporation of this State, an order for relief with respect to which has been entered pursuant to the Federal Bankruptcy Code, 11 U.S.C. § 101 et seq., or any successor statute, may put into effect and carry out any decrees and orders of the court or judge in such bankruptcy proceeding and may take any corporate action provided or directed by such decrees and orders, without further action by its directors or stockholders. Such power and authority may be exercised, and such corporate action may be taken, as may be directed by such decrees or orders, by the trustee or trustees of such corporation appointed or elected in the bankruptcy proceeding (or a majority thereof), or if none be appointed or elected and acting, by designated officers of the corporation, or by a representative appointed by the court or judge, **with like effect as if exercised and taken by unanimous action of the directors and stockholders of the corporation**.

8 Del. C. § 303)(a) (emphasis added).

47.    Under section 303(a) of Delaware Corp. Law, a bankruptcy court may empower,

> [s]uch corporation may, in the manner provided in subsection (a) of this section, but without limiting the generality or effect of the foregoing, alter, amend or repeal its bylaws; constitute or reconstitute and classify or reclassify its board of directors, and name, constitute or appoint directors and officers in place of or in addition to all or some of the directors or officers then in office; amend its certificate of incorporation, and make any change in its capital or capital stock, or any other amendment, change, or alteration, or provision, authorized by this chapter; **be dissolved**, transfer all or part of its assets, merge or consolidate as permitted by this chapter, in which case, however, no stockholder shall have any statutory right of appraisal of such stockholder's stock; change the location of its registered office, change its registered agent, and remove or appoint any agent to receive service of process; authorize and fix the terms, manner and conditions of, the issuance of bonds, debentures or other obligations, whether or not

convertible into stock of any class, or bearing warrants or other
evidences of optional rights to purchase or subscribe for stock of
any class; or lease its property and franchises to any corporation, if
permitted by law.

8 Del. C. § 303(b) (emphasis added).

48.     Debtor iPic Entertainment Inc. ("iPic Entertainment") is a Delaware corporation and owns 100% of the membership interests in Debtor iPic Gold Class Holdings LLC ("Holdings"), a Delaware limited liability company. Holdings holds all of the membership interests in Debtor iPic-Gold Class Entertainment, LLC ("Opco"), which is a Delaware limited liability company and the primary operating entity within the Debtors' organizational structure. Opco also owns 100% of the membership interests in Debtors iPic Texas, LLC, a Texas limited liability company; iPic Media, LLC, a Florida limited liability company; and Delray Beach Holdings, LLC, a Florida limited liability company.   iPic Entertainment Inc., which is the ultimate parent company of the Debtors, was formed in 2017 for the purpose of completing an initial public offering, which occurred in 2018, and pursuant to which iPic Entertainment Inc. became a publicly traded company. iPic Entertainment Inc. traded on the NASDAQ under the symbol "IPIC."

49.     As discussed above, the Debtor iPic Entertainment Inc., as the ultimate parent of the Debtor subsidiaries will be able to cause and/or take the actions necessary to dissolve their corporate existence in accordance with applicable state law.  However, Debtor iPic Entertainment Inc. cannot dissolve under Delaware law unless it has more than 50% consent of its shareholders.

50.     The Debtors do not have the resources to conduct a shareholder vote regarding the dissolution of Debtor iPic Entertainment Inc. Even if Debtor iPic Entertainment Inc. conducted a shareholder vote, it is far from certain that would be an efficient or effective use

DOCS_DE:227815.8 39566/002

of estate resources because it is unlikely that a sufficient number of shareholder would have any

incentive to respond given that their equity interest in the Debtor iPic Entertainment Inc. is

completely worthless.

51.     As a result, Debtor iPic Entertainment Inc. requests, pursuant to Section

303 of Delaware Corporations Law and other laws, that William J. Nolan of FTI Consulting,

Inc., the Debtors' Chief Restructuring Officer and, to the extent necessary, any other appropriate

corporate officer or other representative of any of the Debtors (either together or acting alone) be

empowered, with the same force and effect as if exercised and taken by unanimous action of the

directors, stockholders, members, and managers of such entities, to (a) take all actions

reasonably necessary to dissolve and/or cancel the corporate existences of the Debtors, which

actions may be taken without need for (i) any approval by the directors, stockholders, members,

or managers of such entities, (ii) payment of  any franchise or similar taxes as a condition to the

filing or effectiveness of any certificate of dissolution, certificate of cancellation, or other

appropriate dissolution or cancellation document under state law, or (iii) provision of  notice to

creditors or claimants (it being acknowledged that such notices have been provided as part of the

chapter 11 cases) and (b) amend the charters and other organizational documents of the Debtors

to the extent necessary to carry out such dissolutions or cancellations, without the need to notify

creditors, cause an accounting to be made, prepare any final accounting statements or otherwise

comply with any requirements beyond what is required under applicable state law.  Upon

dissolution of any of the Debtors, the directors and officers of such Debtors will be deemed to

have resigned.

52.     Under these circumstances, the Debtors believe it is appropriate and

necessary for the Court to authorize the dissolution of the Debtors and empower the CRO and

DOCS_DE:227815.8 39566/002

any other corporate officer or other representative of any of the Debtors to dissolve Debtor iPic Entertainment Inc. as requested above. The Debtors have no further business to conduct and no other purpose in remaining active as corporate entities in their respective jurisdictions. The Debtors may incur additional taxes and statutory fees owing to their continued corporate existence absent their prompt dissolution and they longer generate any revenue to pay the fees or taxes they might incur. Plus, it is unlikely that a sufficient number of shareholders would ever respond to such vote even if the Debtors had the resources to conduct such a shareholder vote. Accordingly, it is in the best interests of the Debtors' estates for the Debtors to dissolve as soon as practicable following entry of the Initial Order. Courts in this district have granted similar relief in the context of a dismissal. *See, e.g.*, *In re KG Winddown, Inc. (f/k/a Kona Grill, Inc.)*, Case No. 19-10953 (CSS) (Bankr. D. Del. Feb. 25, 2020).

53.     The relief sought in the Initial Order includes relief to take all necessary steps to dissolve the Debtors by filing appropriate documents but without the need to pay any necessary fees or franchise taxes due. The Debtors are informed that applicable guidelines from the Delaware Secretary of State regarding bankrupt Delaware entities provide that an entity that has filed for bankruptcy is permitted to seek bankruptcy court approval to dissolve the entity in one of three methods: (i) without any fees, taxes and documents filed with the Delaware Division of Corporations; (ii) with the filing of the required documents but no fees or taxes paid to the Delaware Division of Corporation; or (iii) with the filing of the required documents with fees and taxes paid to the Delaware Division of Corporations. Given the limited funds available, the Debtors that are Delaware entities seek approval to file any required documents but that they not be required to pay any fees or franchise taxes due.

E.      **Authorizing Transfer of Certain Litigation Rights to RSA is in the Best Interest of the Estates.**

54.     Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc).

55.     The Debtors submit that authorizing the transfer of the Litigation Rights to RSA in connection with dismissal is appropriate in these circumstances and within the Debtors' sound business judgment.  RSA is providing valuable consideration in exchange for the Litigation Rights.  The Debtors are no longer operating a business and seek to wind down and dismiss the cases rather than pursue the Litigation Rights.

F.      **Abandonment and/or Destruction of Books and Records**

56.     Section 554(a) of the Bankruptcy Code allows a trustee or debtor in possession to abandon and destroy its interest in property of the estate if the property is (i) "burdensome to the estate" or (ii) "of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *see also Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 507 (1986) (noting that a trustee's power to abandon property is broad, subject only to state laws or regulations "reasonably designed to protect the public health or safety from identifiable hazards").

57.     Here, the Debtors request that the Court authorize, but not direct, the Debtors to abandon and destroy the Books and Records pursuant to sections 105(a) and 554 of

the Bankruptcy Code, and Bankruptcy Rule 6007, and to make all payments necessary to

effectuate such destruction.  As previously discussed, the Debtors have sold substantially all of

their assets, no longer have an operating business, and have largely wound down their affairs.  A

substantial portion of their Books and Records were transferred to the Buyer as part of the sale.

To the extent any Books and Records are retained, they will be of no value to the Debtors after

dismissal of the chapter 11 cases, especially after they are dissolved under applicable state law.

For those reasons, the Debtors submit that they should not incur the potentially significant costs

associated with maintaining and storing Books and Records that have no value to their estates,

and they should be authorized to abandon and destroy, as applicable, such Books and Records.

### G.    **Approval of Professional Fees**

58.    In connection with winding down the Debtors' estates and the dismissal of

these chapter 11 cases, and notwithstanding any provisions to the contrary in the Interim

Compensation Order, the Debtors intend to seek the Court's approval of the final payment of

professional fees and expenses incurred by professionals retained throughout these chapter 11

cases.  Courts in this jurisdiction have routinely approved final professional fees in the context of

dismissals.  *See, e.g.*, *In re Real Industry, Inc.*, Case No. 17-12464 (KJC) (Bankr. D. Del. June

27, 2018); *In re Sunco Liquidation, Inc.*, Case No. 17-10561 (KG) (Bankr. D. Del. Aug. 18,

2017); *In re Old Towing Co.*, Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017); *In re

TAH Windown, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017).

59.    Following the Debtors' completion of all matters necessary to wind down

the estates, the Debtors intend to schedule an omnibus hearing to consider final requests for

allowance and payment of all fees and expenses incurred by professionals retained during the

chapter 11 cases. The Debtors will provide notice of such hearing, and the deadline to file such

final fee applications to the applicable professionals.  The Debtors request that the Court retain jurisdiction to consider and rule on any final fee applications following entry of the Dismissal Order, to the extent necessary.

**H.    Termination of the Claims and Noticing Services**

60.    The Debtors also request entry of an order terminating the claims and noticing services (the "Claims and Noticing Services") provided by Stretto.  Upon termination of the Claims and Noticing Services, and except as otherwise provided herein, the Debtors request that Stretto shall have no further obligations under its engagement to the Court, the Debtors, the Debtors' estates, or any other party in interest with respect to the Claims and Noticing Services in these chapter 11 cases.

61.    Pursuant to Local Rule 2002-1(f)(ix), within 14 days of entry of an order dismissing these chapter 11 cases, Stretto will (a) forward to the Clerk of the Court an electronic version of all imaged proofs of claim, (b) upload the creditor mailing list into CM/ECF and (c) file a Final Claims Register containing claims asserted in all of the Debtors' cases on the docket of the remaining case (Case No. 19-11739 (LSS)).  Stretto also will box and deliver all original proofs of claim to the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, Pennsylvania 19154 and file a completed SF-135 Form indicating the accession and location numbers of the archived claims.  In addition, pursuant to Local Rule 2002-1(f)(xii), Stretto will file a Final Claims Register on the docket of each of the Debtors' cases containing only the claims asserted in that specific case.

**I.    All Prior Orders, Settlements, Rulings, and Judgments Should Remain Binding and Continue to Be in Full Force and Effect.**

62.    The dismissal of a chapter 11 case ordinarily provides for what is, in effect, a restoration of the prepetition status quo. *See* 11 U.S.C. § 349(b). A bankruptcy court

may, however, "for cause, order[] otherwise . . . ." *Id.*  Courts in this jurisdiction have regularly allowed orders, including those approving releases and settlements, to be given continued effect after a dismissal, notwithstanding § 349 of the Bankruptcy Code.  *See, e.g.*, *In re Sunco Liquidation, Inc.*, No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Old Towing Co.*, Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); *In re TAH Windown, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) (giving orders, releases, and injunctions continuing effect); *In re City Sports, Inc.*, Case No. 15-12054 (KG) (Bankr. D. Del. Mar. 4, 2016) (giving continued effect to previously entered orders); *In re Coach Am Grp. Holdings Corp.*, Case No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013 (same); *In re ICL Holding Co.*, Case No. 12-13319 (KG) (Bankr. D. Del. Sept. 10, 2014) (same).

63.    Here, numerous parties in interest, including the Buyer and the Debtors, have relied upon orders entered by the Court in connection with these cases.  Specifically, the Sale Order approved the sale of substantially all of the Debtors' assets.  Similarly, the finality of the releases, stipulations, and protections contained in the Final DIP Order were necessary to induce the DIP lender to extend postpetition financing.  As a practical matter, the transactions consummated in reliance upon these orders are indefeasible and impossible to unwind.

64.    Given these circumstances, the Debtors submit that cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court in these cases to be given continued effect, notwithstanding dismissal of these cases.

**J.        The Proposed Dismissal Milestones**

65.        The Debtors submit that dismissal of the Debtors' chapter 11 cases, and submission of the proposed Dismissal Order to the Court for its consideration, should be subject to certification of the Debtors' counsel that:

- All quarterly fees of the U.S. Trustee owed in connection with the chapter 11 cases have been paid in full and all monthly operating reports have been filed.

- The professional fees incurred in the chapter 11 cases have been approved on a final basis (to the extent applicable) and paid in full, or in the amounts agreed to by the applicable professionals.

- The Settlement Distribution has been completed to pay all unpaid, timely filed administrative expense claims, section 503(b)(9) claims, and distributions to holders of priority claims, as applicable, either with payment in full or have received an appropriate pro rata distribution from remaining available funds after higher priority creditors have been paid, consistent with the priorities of the Bankruptcy Code.

- All books and records have been destroyed or abandoned.

66.        As soon as reasonably practicable following the filing of a certification of counsel stating that the foregoing conditions precedent to dismissal have been met (the "Certification"), the Debtors request that the Court enter the Dismissal Order, substantially in the form submitted herewith.

67.        The Debtors will serve the Certification on the U.S. Trustee and all entities that have requested notice pursuant to Bankruptcy Rule 2002 but will not send the Certification to all of the Debtors' creditors and equity holders and parties in interest, as such parties will receive reasonable notice of the proposed dismissal through the notice of hearing for this Motion.

**Notice**

68.        The Debtors will provide a copy of this Motion and notice of the hearing on this Motion to the following parties, or their counsel, if known: (a) the Office of the United

States Trustee; (b) counsel to the Committee; (c) counsel to the Debtors' prepetition and postpetition lenders; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing.  The Debtors will provide a shortened form of notice of the Motion and notice of the hearing on the Motion, in the form attached hereto as **Exhibit C**, to all creditors that have filed proofs of claims in the cases or that have scheduled claims.

69.     The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

70.     No previous motion or application for the relief sought herein has been made to this or any other court.

DOCS_DE:227815.8 39566/002

WHEREFORE, the Debtors respectfully request that the Court enter the proposed orders, substantially in the forms attached to this Motion as **Exhibit A** and **Exhibit B**, and grant such other and further relief as may be appropriate.

Dated:   April 27, 2020

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
_____
Jeffrey N. Pomerantz (CA Bar No. 143717)
Debra I. Grassgreen (CA Bar No. 169978)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:      jpomerantz@pszjlaw.com
                dgrassgreen@pszjlaw.com
                pkeane@pszjlaw.com

*Attorneys for Debtors and Debtors in Possession*