# EXHIBIT 1

# Declaration of Paul Safran

43562187 v3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> iPic-Gold Class Entertainment, LLC, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 19-11739 (LSS) <br><br> (Jointly Administered) |

**DECLARATION OF PAUL SAFRAN IN SUPPORT OF EMPLOYEES' RETIREMENT SYSTEM OF ALABAMA AND TEACHERS' RETIREMENT SYSTEM OF ALABAMA'S FIRST (1ST) OMNIBUS (SUBSTANTIVE) OBJECTION TO SECTION 503(b)(9) CLAIMS PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1**

I, Paul Safran, pursuant to 28 U.S.C. § 1746, declare:

1. I am the Chief Executive Officer and General Counsel for iPic Theaters, LLC (the "Buyer"), the purchaser of substantially all of the Debtors' assets in the Section 363 sale approved by this Court (the "Sale"). Prior to the Sale, I was the General Counsel for the Debtors for 8 years. I submit this Declaration in further support of the *First (1st) Omnibus (Substantive) Objection to Section 503(b)(9) Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1* (the "Objection"),[2] filed by the Employees' Retirement System of Alabama and Teachers' Retirement System of Alabama (together, "RSA") as it relates to the Objection to amended claim number 256 (the "Empire Claim") filed by Empire Office, Inc. ("Empire"). I am personally familiar with the factual background relating to the Empire Claim and the information contained in the Objection and RSA's Reply in support of the Objection. I am authorized to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: iPic Entertainment Inc. (9582); iPic-Gold Class Entertainment, LLC (4684); iPic Gold Class Holdings LLC (6315); iPic Media, LLC (0150); iPic Texas, LLC (N/A); and Delray Beach Holdings, LLC (1035). The Debtors' principal place of business is 433 Plaza Real, Suite 335, Boca Raton, FL 33432.

[2] Capitalized terms undefined herein shall have the meanings ascribed to them in the Objection and related documents.

43562187 v3

execute this Declaration.

## The Debtors' Business

2.  The Debtors' businesses were theater and restaurant business.  Specifically, the Debtors were a leading provider of polished-casual dining in a luxury theater auditorium environment.

3.  In the ordinary course of business, the Debtors screened motion pictures in a luxury theater environment for their patrons, and served food, drinks, and concessions in the theaters and adjoining restaurants.  The Debtors routinely purchased food, concessions, cleaning supplies, and other products necessary to operate the theaters and restaurants.

## The Delray Beach Project

4.  In 2017, the Debtors entered into negotiations with the City of Delray Beach's Community Redevelopment Agency (the "CRA") regarding the potential development of a new theater in Delray Beach, Florida.  These negotiations culminated in the execution of an agreement to pursue the Delray development project (the "Delray Project").

5.  Unlike prior theater development projects, the Delray Project had several unique characteristics due to requirements imposed by the CRA.  Specifically, the Delray Project was not limited to a new lease and build-out of a theater and restaurant facilities.  Rather, the CRA required the development of not only the theater and restaurant, but also adjoining office space, retail space, and a parking garage.  As the Debtors' businesses had never (and have not since) involved such expansive and complex commercial development projects, the Debtors facilitated the creation of a joint venture of third parties, including development companies American Realty Advisors and Samuels & Associates to develop the Delray Project.

6.  In response to the CRA's requirements relating to the build-out of office space at

the Delray Project, the Debtors agreed to enter into the Office Lease (as defined in the Objection). At the time, the Debtors' existing corporate office space located in Boca Raton, Florida, was sufficient for their business purposes and the Debtors had no business need to relocate their corporate offices. Based upon my personal involvement in the transactions associated with the Delray Project and Office Lease, but for the unique circumstances of the Delray Project and requirements imposed by the CRA, the Debtors would not have entered into the Office Lease or contracted with Empire to build out the Delray Office Space.[3]

7. From my knowledge and personal experience as an officer of the Debtors, the build-out of the Delray Office Space and related transactions with Empire were unique and singular occurrences. Based upon my understanding of the ordinary meaning of the phrase "ordinary course of such debtor's business," I do not consider the transaction with Empire to be in the ordinary course of the Debtors' business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 1, 2020                    /s/ *Paul Safran*
                                             Name: Paul Safran
                                             Title: CEO and General Counsel

---

[3] The Office Lease was rejected in the Bankruptcy Case.